RAWLS, JOHN S., Associate Judge.
Defendants, Gerber Groves, Inc., Fred Gutwein et ux., Wendell Gudeman et ux., Edwin Gutwein et ux., R. C. McClurg et ux., appeal a final decree granting plaintiff, Belle Glade Agricultural Contractors, Inc., a judgment in the sum of $19,925.00 as compensation for improving defendants’ agricultural lands.
Appellants pose five points on appeal which are summarized as follows:
1. The trial court erred by impressing a lien upon the individual defendants’ lands because Gerber, the contractor, had properly executed affidavits to the effect that no liens were outstanding, pursuant to the provisions of Chapter 84, Florida Statutes 1963, F.S.A.
2. That plaintiff was unable to point out the individual ownership of the land alleged to have been improved.
3. That Chapter 85, Florida Statutes 1963, F.S.A., is not applicable, but if it is so held, Section 85.22 authorizes an agricultural lien only upon crops or produce of the land.
Plaintiff, Belle Glade Agricultural Contractors, initially filed a claim of lien upon defendants’ lands pursuant to the provisions of Chapter 84, Florida Statutes 1963, F.S.A. Defendants’ motion to dismiss was granted with leave to file a cause of action in the nature of an equitable lien pursuant to Chapter 85, Florida Statutes, F.S.A. Plaintiff’s amended complaint was filed and the final decree now being reviewed was entered upon the cause of action so started.
Of materiality to this appeal are the findings of fact made by the Chancellor in his final decree and supported by the record, viz.:
“a. The circumstances herein arose out of an oral agreement between the plaintiff corporation and defendant Howard Drawdy for certain land clearing services on agricultural lands. This oral agreement was later reduced to a written memorandum agreement on or about September 21, 1964. Drawdy was a prime contractor contracting with the defendant Gerber Groves, Inc., for the performance of the work contemplated in the sub-contract with the plaintiff. Gerber Groves, Inc., occupied a rather unusual position in the entire transaction in that it had taken an option on certain lands owned by the defendants Hilliards and later sold to the other named defendants, viz.: The Gutweins, Gudeman and McClurg. In the testimony of its president, Gerber Groves, Inc., acted as a ‘conduit’ to the ultimate purchasers. The defendant Gerber Groves, Inc., would contract to sell the lands which it had on option from the Hilliards to the ultimate purchasers in a finished state as a growing orange grove. At such time as they chose they would have the deed go directly from the Hilliard Brothers to the ultimate purchaser or sometimes channeled through other channels. The president of the defendant corporation testified that the ultimate purchasers left the entire operation in his hands and at all times Gerber Groves, Inc., maintained complete control of the entire operation from the optioning of the land through the clearing, bedding and planting of the orange groves. It was in the clearing phase of these operations that the plaintiff, Belle Glade Agricultural Contractors, Inc., came into the picture as a sub-contractor to the defendant Drawdy. The defendant Gerber Groves, Inc., realizing that it could not get a bond for performance by the defendant Drawdy, whom they knew to be ‘under financed’, relied instead upon a 20% hold-back arrangement in lieu of bond. When *671 Drawdy’s performance began to slip and he was left with a paucity of land clearing equipment, the plaintiff Belle Glade Agricultural Contractors, Inc., was brought into the picture to do the work which Drawdy was unable to complete and did work on the land with the knowledge and consent and under the supervision of Gerber Groves, Inc. Mr. Gerber, President of Gerber Groves, Inc., testified that the 20% hold-back was invaded several times to aid Drawdy in meeting his bills, and that in truth and in fact Drawdy had received far more than 80% of the amounts due him when he left the job. The plaintiff received approximately $7,000 from Drawdy for the work then done, but by a statement of accounts between Drawdy and plaintiff it was found there was still unpaid work in the amount of $19,925.00 due the plaintiff for his work done on the lands of the defendants.
“The main thrust of the plaintiff’s position is that he is entitled to a lien under provisions of Chapter 85 as opposed to the statutory lien provisions of Chapter 84, Florida Statutes.
“The plaintiff filed notices and claims of lien against the various defendants in the office of the Clerk of Circuit Court in Hendry County where the land was located.
“b. The Court finds as a fact that the defendant Gerber Groves, Inc., was at all times and in all phases of the operation the agent of the defendants. The Gut-weins, Gudeman and McClurg, and that the acts of Gerber Groves, Inc., were as a matter of law the acts of the defendants named above; and that the said defendants the Gutweins, Gudeman and McClurg through their agent Gerber Groves, Inc., did contract for the performance of the work done upon the lands either owned by them in fee simple or as equitable owners under the option to purchase held by their agent Gerber Groves, Inc., while the legal title to same was held in the Hilliards.
“c. It is further found as a matter of law that the situation herein found created a lien under the provisions of Chapter 88 [sic], Florida Statutes, and that there was privity, as a matter of fact and law.
“d. That the defendants Gerber Groves, Inc., the Gutweins, Gudeman and Mc-Clurg received the benefits of the labors and services performed by the plaintiff Belle Glade Agricultural Contractors, Inc.
“e. That this lien as found under the provisions of Chapter 85, Florida Statutes [F.S.A.], was perfected by the plaintiff Belle Blade Agricultural Contractors, Inc.”
The first two points deal with the affidavits executed by Gerber Groves, Inc., which terms itself as the contractor, and the question of individual ownership of specific parcels. The record reflects and appellants state in their brief that as of October 1963, all individual owners had paid in full for their “orange groves” and were given affidavits of No Liens by Gerber Groves, Inc., pursuant to Chapter 84. Such affidavits given on that occasion bear no materiality to the issues posed on this appeal. We are not here concerned with the rights of mortgagees or other third parties. The work performed for which the instant lien was sought did not commence until the month of May 1964, a considerable time subsequent to title vesting in the individual landowners. We are confronted with facts that display a pattern of transactions analogous to the ancient shell game, i.e.: Under which shell is the orange grove? The individual purchasers, according to Edward H. Gerber, President of Gerber Groves, Inc., lived outside of Florida and seldom visited their property. The conveyances were basically of raw land either purchased through an option owned individually by Gerber or through *672 Gerber Groves, Inc., along with a contract by Gerber Groves which agreed, within a time certain, to clear and plant an orange grove upon same. In short, the individuals received title to raw land, but paid for a planted orange grove. Edward Gerber, individually, and Gerber Groves, Inc., were so intertwined with the record owners as to make it virtually impossible to ascertain which shell covered a particular orange grove. The individual owners having entrusted Gerber Groves with such vast authority cannot at this stage be heard to deny the actions and conduct of their agent. The Chancellor held and we agree that the provisions of Chapter 84, Florida Statutes, F.S.A., and the affidavits filed pursuant thereto are not applicable.
Appellants’ last point concerns the applicability and limitations of Chapter 85, Florida Statutes, F.S.A. At the outset, Appellants scrutinize Section 85.04 and conclude that the work done by appellee was not upon any farm, orchard, grove, etc., in that the lands were under development and had not reached the status of being a grove or a farm. Such an argument is specious. Gerber Groves, Inc., ■contracted to transform raw and unimproved property into grove land and collected the price of grove land. The statute specifically applies to labor performed in “* * * clearing up, fencing, ditching or ■draining * * * improving * * * the same; upon such farm, orchard, grove, garden, park or other grounds.” (Emphasis supplied.) Appellee accomplished in part such transformation by the considerable expenditure of labor and materials, and the Chancellor was correct in finding upon the uncontradicted facts of this case that it perfected a lien upon the subject lands.
Appellants’ argument as to application of Section 85.22, Florida Statutes, is without merit in that said section is clearly restricted to “Liens for Loans and Advances.” We are not here concerned with .loans and advances.
Finally, Appellee cross-appeals because of the Chancellor’s failure to award interest from the date that the work was completed. As reflected in the Chancellor’s findings, Belle Glade at the outset contracted with and looked to Drawdy for its money. Only after Drawdy “went broke” and demonstrated inability to complete his contract did Belle Glade make claim upon Gerber, who had a litigable position upon which to deny liability.
Upon the facts here presented, we will not hold the Chancellor in error for failure to award interest.
Affirmed.
ALLEN, Acting C. J., and PIERCE, L, concur.