HOWARD-GREEN ELECTRICAL COMPANY, INC. v. CHANEY & JAMES CONSTRUCTION CO., INC., MOTEL PROPERTIES, INC., CHARLES P. LANDT, TRUSTEE, CAMERON-BROWN COMPANY, BRUCE W. RILEY, TRUSTEE, FIRST UNION NATIONAL BANK OF NORTH CAROLINA, RALEIGH, DOWNTOWN ENTERPRISES, INC. AND GREENWICH SAVINGS BANK, AND TRANSAMERICA INSURANCE CO.

No. 7110SC458

(Filed 4 August 1971)

1. **Contracts § 12— construction — intention of the parties**

The heart of a contract is the intention of the parties, which is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time.

2. **Contracts § 16— time of final payment under subcontract**

Subcontract provision that "Final payment will be paid within 15 days of acceptance of and payment for the entire contract by the Owner" created no condition precedent by which the subcontractor's right to receive full payment from the general contractor was conditioned upon the general contractor being first paid in full by the owner, but relates solely to the time of payment, and in that regard postpones payment only until, in the usual course of business, final settlement of accounts between the general contractor and the owner could reasonably be expected; by execution of a labor and material payment bond providing that a claimant may sue on the bond if not paid in full within 90 days after the completion of its work, the general contractor and its surety on the bond recognized the 90-day period as a reasonable time after which payment to the subcontractor becomes due.

APPEAL by defendants, Chaney & James Construction Co., Inc., and Transamerica Insurance Co., from *Clark, Judge,* 8 February 1971 Civil Session of Superior Court held in WAKE County.

This is an appeal from a summary judgment in favor of plaintiff. The facts, which were established by the pleadings, answers to interrogatories, and affidavit, are not in dispute and may be summarized as follows:

On 1 July 1968, Chaney & James Construction Co., Inc. (Construction Co.) contracted with Motel Properties, Inc. (Owner) to build a Holiday Inn Motor Hotel on property of Owner in Raleigh, N. C., for a basic price of $1,861,600.00. Thereafter, Construction Co. entered into a written subcontract

with plaintiff under which plaintiff agreed to and did furnish all labor, equipment and materials for the electrical work in construction of the hotel for a contract price, as adjusted by change orders agreed to by plaintiff and Construction Co., of $134,486.76. Plaintiff completed work under its subcontract on 3 March 1970, and no question is raised as to its performance. From time to time Construction Co. made payments to plaintiff on account of work performed by plaintiff under the electrical subcontract, and there now remains a balance owed plaintiff on that contract of $13,430.45. Construction Co. recognizes it owes this amount to plaintiff, but denies that it is presently due and payable.

In connection with the prime contract, Construction Co., as principal, and Transamerica Insurance Co. (Insurance Co.), as surety, executed a labor and material payment bond in the amount of $1,861,000.00 to Owner, as obligee, for the benefit of claimants as defined in the bond, conditioned upon the prompt payment by Construction Co. to all claimants for labor and material used or reasonably required for use in performance of the prime contract. Plaintiff is a claimant as defined in the bond. In the bond the principal and surety agreed that every claimant who has not been paid in full before the expiration of 90 days after the date on which the last of such claimant's work was performed or materials were furnished may sue on the bond. Plaintiff gave due notice of its claim to Insurance Co. as required by the bond, and the 90-day period after plaintiff completed performance of all of its work under its subcontract with Construction Co. expired on 1 June 1970. Plaintiff's claim was not paid, and on 4 September 1970 plaintiff commenced the present action to collect its claim.

A dispute arose between Construction Co. and Owner, which caused delay in settlement of accounts between those parties and delay in final payment to Construction Co. by Owner under the prime contract. This dispute is the subject of a suit now pending between those parties in the United States District Court. The dispute between Construction Co. and Owner and the delay in final payment by Owner to Construction Co. was not caused by any default on the part of plaintiff in the present action in performance of its subcontract for the electrical work, and no claim is made by either party in the United States District Court suit that plaintiff in the present action

---

Electrical Co. v. Construction Co.

---

defaulted in any way in performance under its subcontract for the electrical work.

Upon finding that no genuine issue of fact exists between the parties in this action as to the foregoing facts, the court granted plaintiff's motion for summary judgment and entered judgment that plaintiff recover $13,430.45, with interest thereon from 1 June 1970, from defendant Construction Co., and that it recover the amount of the bond against defendant Insurance Co., as surety, to be discharged upon payment of the $13,430.45 with interest.

From this judgment, defendants Construction Co. and Insurance Co. appealed. The rights of other defendants are not involved on this appeal.

*Purrington & Purrington by A. L. Purrington, Jr., for plaintiff appellee.*

*Poyner, Geraghty, Hartsfield & Townsend by Marvin D. Musselwhite, Jr., for defendant appellants.*

PARKER, Judge.

Defendant Construction Co. acknowledges that it owes plaintiff a balance of $13,430.45 on account of plaintiff's completed performance under the subcontract for the electrical work, and the sole dispute between the parties is whether that balance is presently due and payable. The written subcontract between plaintiff and defendant Construction Co. contains the following:

"3. Payments shall be made monthly in accordance with the following procedure:

"(a) On the 25th of each month (or 2 days before the date on which the contractor has agreed to submit its estimate to the owner, if such date would be earlier in the month) Sub-Contractor shall submit to the Contractor an estimate of materials on hand and work done. Estimates submitted after the submission date in any month may be held by Contractor until the next submission date for processing.

"(b) If satisfactory, the estimate will be forwarded to the Owner, incorporated with the Contractor's estimate.

"(c) To the extent that the Owner recognize the Sub-Contractors estimate and not later than ten days after payment to the Contractor, the Contractor will pay the Sub-Contractor the per cent of the Sub-Contractors' estimate shown in Paragraph 3 of the Basic Contract, provided that it shall not be incumbent upon the Contractor to make payments in an amount that would not leave a sufficient balance to cover all obligations of the Sub-Contractor for labor, materials, etc., previously furnished or to be furnished by the Sub-Contractor under this Sub-Contract.

"(d) Final payment will be paid within 15 days of acceptance of and payment for the entire contract by the Owner, but not before delivery of executed releases of the Sub-Contractor as required by the Contractor."

Appellants contend that the foregoing language in the written subcontract, particularly the language in sub-paragraph 3(d), postponed the time of payment of the balance due under the subcontract from defendant Construction Co. to plaintiff until the Construction Co. receives its final payment from Motel Properties, Inc., the Owner. We do not agree.

[1, 2] "The heart of a contract is the intention of the parties, which is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time." *Electric Co. v. Insurance Co.,* 229 N.C. 518, 50 S.E. 2d 295. Here, plaintiff contracted solely with the prime contractor and did not contract with or extend credit to the Owner, nor did plaintiff accept responsibility for any part of the building project other than the electrical work. Viewing the language of the electrical subcontract in light of the situation of the parties, the end which they sought to accomplish, and against the background of customary practices in the construction industry, it is our opinion that by paragraph 3(d) of their contract the parties created no condition precedent by which plaintiff's right to receive full payment from defendant Construction Co. was conditioned upon the Construction Co. being first paid in full by the Owner. Rather, in our opinion, paragraph 3(d) relates solely to the time of payment, and in that regard postpones payment only until, in the usual course of business, final settlement of accounts between the general contractor and the Owner could reasonably be expected.

Electrical Co. v. Construction Co.

Our conclusion is supported by the decision in *A. J. Wolfe Company v. Baltimore Contractors, Inc.*, 355 Mass. 361, 244 N.E. 2d 717, a case which presented a factual situation very similar to the case now before us. In that case a subcontractor for electrical work on an apartment house sued the general contractor and the bonding company. The subcontract called for monthly progress payments and provided that "[t]he balance of the contract price shall be paid . . . within thirty . . . days after full and final payment for the work" by the owners to the general contractor. The general contractor and the bonding company defended on the grounds that the subcontractor had not produced evidence that the owners ever paid the general contractor amounts due for the several classes of work done by the subcontractor. In affirming the trial court's judgment in favor of the subcontractor, the Supreme Judicial Court of Massachusetts said:

> "We interpret art. II(a) merely as setting the time of payment and not as creating a condition precedent to payment. In the absence of a clear provision that payment to the subcontractor is to be directly contingent upon the receipt by the general contractor of payment from the owner, such a provision should be viewed only as postponing payment by the general contractor for a reasonable time after requisition (and completion of the subcontractor's work mentioned in the requisition) so as to afford the general contractor an opportunity to obtain funds from the owner."

To the same effect is the decision in *Thos. J. Dyer Co. v. Bishop International Engineering Co.*, 303 F. 2d 655 (6th Cir. 1962). That case also involved an action brought by a subcontractor against the general contractor and the surety on its bond. Paragraph 3 of the subcontract provided that the subcontractor should be paid a specified amount for performance under the subcontract, "no part of which shall be due until five (5) days after Owner shall have paid Contractor therefor. . . . " The work was completed, but before making full payment to the general contractor, the Owner filed for reorganization under Chapter X of the Federal Bankruptcy Act. In the subcontractor's action against the general contractor, the latter defended on the grounds that, under pargraph 3 of the subcontract, no payment was due. In affirming a summary judgment in favor of the plaintiff-subcontractor the Court said:

"In our opinion, paragraph 3 of the subcontract is a reasonable provision designed to postpone payment for a reasonable period of time after the work was completed, during which the general contractor would be afforded the opportunity of procuring from the owner the funds necessary to pay the subcontractor. *Stewart v. Herron,* 77 Ohio St. 130, 149, 82 N.E. 956. To construe it as requiring the subcontractor to wait to be paid for an indefinite period of time until the general contractor has been paid by the owner, which may never occur, is to give to it an unreasonable construction which the parties did not intend at the time the subcontract was entered into."

In the case now before us, the payment bond which was executed by defendant Construction Co., as principal, and by defendant Insurance Co., as surety, provides as follows:

"2. The above named Principal and Surety hereby jointly and severally agree with the Owner that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed or materials were furnished by such claimant, may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon. . . . "

No question is raised but that plaintiff is a claimant within the meaning of the bond. Neither payment by the Owner to the general contractor, nor completion of work of other subcontractors, are among conditions imposed by the bond. By executing the bond, defendant-appellants have themselves recognized the 90-day period as a reasonable time after which payment to plaintiff becomes due.

The judgment in favor of plaintiff is

Affirmed.

Judges BRITT and MORRIS concur.