353 So.2d 840 (1977)
PEACOCK CONSTRUCTION COMPANY, INC., Petitioner,
v.
MODERN AIR CONDITIONING, INC., Respondent.
PEACOCK CONSTRUCTION COMPANY, INC., Petitioner,
v.
OVERLY MANUFACTURING COMPANY, Respondent.
Nos. 50758 and 50793.
Supreme Court of Florida.
December 15, 1977.
Julian D. Clarkson, Fort Myers, for petitioner.
Harry A. Blair and Harvey B. Goldberg of Goldberg, Rubinstein & Buckley, Fort Myers, for respondent.
*841 BOYD, Acting Chief Justice.
We issued an order allowing certiorari in these two causes because the decisions in them of the District Court of Appeal, Second District, conflict with the decision in Edward J. Gerrits, Inc. v. Astor Electric Service, Inc., 328 So.2d 522 (Fla.3d DCA 1976).[1] The two causes have been consolidated for all appellate purposes in this Court because they involve the same issue. That issue is whether the plaintiffs, Modern Air Conditioning and Overly Manufacturing, were entitled to summary judgments against Peacock Construction Company in actions for breaches of identical contractual provisions.
Peacock Construction was the builder of a condominium project. Modern Air Conditioning subcontracted with Peacock to do the heating and air conditioning work and Overly Manufacturing subcontracted with Peacock to do the "rooftop swimming pool" work. Both written subcontracts provided that Peacock would make final payment to the subcontractors,
"within 30 days after the completion of the work included in this sub-contract, written acceptance by the Architect and full payment therefor by the Owner."[2]
Modern Air Conditioning and Overly Manufacturing completed the work specified in their contracts and requested final payment. When Peacock refused to make the final payments the two subcontractors separately brought actions in the Lee County Circuit Court for breach of contract. In both actions it was established that no deficiencies had been found in the completed work.[3] But Peacock established that it had not received from the owner[4] full payment for the subcontractors' work. And it defended on the basis that such payment was a condition which, by express term of the final payment provision, had to be fulfilled before it was obligated to perform under the contract. On motions by the plaintiffs, the trial judges granted summary judgments in their favor. The orders of judgment implicitly interpreted the contract not to require payment by the owner as a condition precedent to Peacock's duty to perform.
The Second District Court of Appeal affirmed the lower court's judgment in the appeal brought by Modern Air Conditioning.[5] In so doing it adopted the view of the majority of jurisdictions[6] in this country that provisions of the kind disputed here do not set conditions precedent but rather constitute absolute promises to pay, fixing payment by the owner as a reasonable time for when payment to the subcontractor is to be made. When the judgment in the Overly Manufacturing case reached the Second District Court, Modern Air Conditioning had been decided and the judgment, therefore, was affirmed on the authority of the *842 latter decision.[7] These two decisions plainly conflict with Gerrits, supra.
In Gerrits, the Court had summarily ordered judgment for the plaintiff/subcontractor against the defendant/general contractor on a contractual provision for payment to the subcontractor which read,
"The money to be paid in current funds and at such times as the General Contractor receives it from the Owner." Id. at 523.
In its review of the judgment, the Third District Court of Appeal referred to the fundamental rule of interpretation of contracts that it be done in accordance with the intention of the parties. Since the defendant had introduced below the issue of intention, a material issue, and since the issue was one that could be resolved through a factual determination by the jury, the Third District reversed the summary judgment and remanded for trial.
Peacock urges us to adopt Gerrits as the controlling law in this State. It concedes that the Second District's decisions are backed by the weight of authority. But it argues that they are incorrect because the issue of intention is a factual one which should be resolved after the parties have had an opportunity to present evidence on it. Peacock urges, therefore, that the causes be remanded for trial. If there is produced no evidence that the parties intended there be condition precedents, only then, says Peacock, should the judge, by way of a directed verdict for the subcontractors, be allowed to take the issue of intention from the jury.
The contractual provisions in dispute here are susceptible to two interpretations. They may be interpreted as setting a condition precedent or as fixing a reasonable time for payment. The provision disputed in Gerrits is susceptible to the same two interpretations. The questions presented by the conflict between these decisions, then, are whether ambiguous contractual provisions of the kind disputed here may be interpreted only by the factfinder, usually the jury, or if they should be interpreted as a matter of law by the court, and if so what interpretation they should be given.
Although it must be admitted that the meaning of language is a factual question, the general rule is that interpretation of a document is a question of law rather than of fact. 4 Williston on Contracts, 3rd Ed., § 616. If an issue of contract interpretation concerns the intention of parties, that intention may be determined from the written contract, as a matter of law, when the nature of the transaction lends itself to judicial interpretation. A number of courts, with whom we agree, have recognized that contracts between small subcontractors and general contractors on large construction projects are such transactions. Cf. Thos. J. Dyer Co. v. Bishop International Engineering Co., 6 Cir., 303 F.2d 655 (1965). The reason is that the relationship between the parties is a common one and usually their intent will not differ from transaction to transaction, although it may be differently expressed.
That intent in most cases is that payment by the owner to the general contractor is not a condition precedent to the general contractor's duty to pay the subcontractors. This is because small subcontractors, who must have payment for their work in order to remain in business, will not ordinarily assume the risk of the owner's failure to pay the general contractor. And this is the reason for the majority view[8] in this country, which we now join.
Our decision to require judicial interpretation of ambiguous provisions for final payment in subcontracts in favor of subcontractors should not be regarded as anti-general contractor. It is simply a recognition that this is the fairest way to deal with the problem. There is nothing in this opinion, however, to prevent parties to these contracts from shifting the risk of payment failure by the owner to the subcontractor. But in order to make such a shift the contract *843 must unambiguously express that intention. And the burden of clear expression is on the general contractor.
The decisions of the Second District Court of Appeal to affirm the summary judgments were correct. We adopt, therefore, these two decisions as the controlling law in Florida and we overrule Gerrits, to the extent it is inconsistent with this opinion.
The orders allowing certiorari in these two causes are discharged. It is so ordered.
ENGLAND, SUNDBERG, HATCHETT and KARL, JJ., concur.
NOTES
[1] Art. V, § 3(b)(3), Fla. Const., gives us jurisdiction.
[2] Original Record. p. 7, Sup.Ct. Case No. 50,758; Original Record, p. 4, Sup.Ct. Case No. 50,793.
[3] In fact, in the Modern Air Conditioning case the Architect stated in a sworn deposition that he felt the heating and air conditioning equipment, although not yet operated, was complete per the plans and specifications. Original Record, p. 37. Sup.Ct. Case No. 50,758.
[4] The owner, a corporation, had entered proceedings in bankruptcy.
[5] Peacock Construction Co. Inc. v. Modern Air Conditioning, 339 So.2d 294 (Fla.2d DCA 1976).
[6] Schuler-Haas Elec. v. Aetna Casualty & Surety, 49 A.D.2d 60, 371 N.Y.S.2d 207 (1975); Howard-Green Elec. Co. v. Chaney & James Const. Co., 12 N.C. App. 63, 182 S.E.2d 601 (1971); A.J. Wolfe Co. v. Baltimore Contractors, Inc., 355 Mass. 361, 244 N.E.2d 717 (1969); Fishman Const. Co. v. Hansen, 238 Md. 418, 209 A.2d 605 (1965); Darrell T. Stuart Contractor of Arizona v. Bridges, 2 Ariz. App. 63, 406 P.2d 413 (1965); Mignot v. Parkhill, 237 Or. 450, 391 P.2d 755 (1964); Byler v. Great Am. Ins. Co., 395 F.2d 273 (10th Cir.1968); Thos. J. Dyer Co. v. Bishop Intern. Engineering Co., 303 F.2d 655 (6th Cir.1962); Trinity Universal Ins. Co. v. Smithwick, 222 F.2d 16 (8th Cir.1955), cert. den. 350 U.S. 837, 76 S.Ct. 74, 100 L.Ed. 747 (1955); Moore v. Continental Casualty Co., 366 F. Supp. 956 (W.D.Okl. 1973). Contra: Standard Asbestos Mfg. Co. v. Kaiser, 316 Ill. App. 441, 45 N.E.2d 75 (1942); Mascioni v. I.B. Miller Inc., 261 N.Y. 1, 184 N.E. 473 (1933).
[7] Peacock Construction Co. v. Overly Mfg. Co., 343 So.2d 850 (Fla. 1976).
[8] See footnote 6, supra.