369 So.2d 591 (1978)
SNEAD CONSTRUCTION CORP., a Florida Corporation and American Employers' Insurance Company, a Massachusetts Corporation, Appellants,
v.
Sidney LANGERMAN, Etc., et al., Appellees.
Nos. GG-199, HH-395.
District Court of Appeal of Florida, First District.
July 12, 1978.
Rehearings Denied September 7, 1978.
*592 S. LaRue Williams of Kinsey, Vincent, Pyle & Williams, Daytona Beach, for appellants.
Arthur H. Gehris, III of Elliott, Tindell & Gehris, Daytona Beach, Stephen B. Rakusin, Gainesville, for appellees.
ERVIN, Judge.
Appellees, partners in Avanti Construction, sub-contracted with appellant Snead Construction Company to furnish materials and labor in the construction of two hotels in Daytona Beach. Appellant American Employers' Insurance Company was the surety on Snead's performance and payment bond. The sub-contract provided that Avanti would be paid monthly, based on a percentage of the completion charge; however, before either project was completed, in February, 1974, Snead withdrew, and Avanti followed. This suit was for sums still owed Avanti by Snead.
Avanti's evidence was that one hotel was 94% complete and the other 64% complete. Snead's evidence on the percentage of contract completion differed: 85% and 35% completion. Snead also presented testimony on the actual cost of materials and labor Avanti furnished. The trial judge found Avanti entitled to a total of $67,603.26, including interest of $10,842.26, computed at 6% from May, 1974. Appellants filed an appeal from that judgment in this court. Thereafter, hearings were held on Avanti's request for attorney's fees, and the trial judge granted "reasonable attorney's fees," in accordance with Section 713.29, Florida Statutes (1977), over objections of appellants. Appellants' filed an interlocutory appeal from that order, and we consolidated the cases.
Appellants argue first that the trial court should not have entered judgment for Avanti because it failed to prove the actual value of labor and materials it furnished, citing Golub v. De Linardy Flooring Co., 44 So.2d 75 (Fla. 1950). In that case a special master found that 80% of the contract for had been completed and awarded plaintiff contractor 80% of the contract price. The Florida Supreme Court reversed because the plaintiff had only shown that his costs generally were 80% of the contract price and that he charged 80% of the contract at this stage of completion. The court stated that he should have "submitted proof as to the value of all labor, services . . and materials actually furnished ..." Golub, supra, at 76. Here, there was testimony on the percentage of completion, substantial testimony that the work shown on the percentage of completion charts was actually done, as well as testimony regarding the actual costs of materials and labor. Also, appellants never objected to the appellees' use of percentage-of-completion figures during the three days of testimony. Only during final arguments did appellants mention that the relevant measure of damages might be other than that the appellees had sought to prove. Had they actually objected in a timely fashion to the testimony now complained of, and had they been sustained, appellees would have had time to submit other proof. There is no ruling on this question by the trial court anywhere in the record. Appellants have waived this point on appeal. See 2 Fla.Jur. Appeals § 66.
Next, relying on Gerrits v. Astor Electrical Services, 328 So.2d 522 (Fla. 3d DCA 1976), appellants argue their obligation to pay Avanti was conditioned on payment to Snead by the owner.[1] In Gerrits the district court reversed a summary judgment in favor of a sub-contractor and remanded *593 the case for a jury to determine whether the parties intended to shift the risk of non-payment to the subcontractor. The disputed contract provision stated that payments to the sub-contractor were to be made "at such times as the General Contractor receives it from the Owner." Id. at 523. More recently, the Florida Supreme Court in Peacock Construction Company v. Modern Air Conditioning, 353 So.2d 840 (Fla. 1977)[2], held that interpretation of contracts between sub-contractors and contractors was a matter of law:
The reason is that the relationship between the parties is a common one and usually their intent will not differ from transaction to transaction, although it may be differently expressed. Id. at 842.
In Peacock the trial court had entered summary judgment for the sub-contractor against the contractor and its surety. The contractor appealed, arguing that the parties' contract made payment by the owner to the contractor a condition precedent to its duty to pay the sub-contractor. There, the clause was that final payment to the sub-contractor would be made
[w]ithin 30 days after the completion of the work included in this subcontract, written acceptance by the architect and full payment therefor by the owner. Id. at 841.
The Florida Supreme Court found the provision was ambiguous. It held the clause could be construed as setting a condition precedent or as fixing a reasonable time for payment. The court stated that the intent in most sub-contracts is that risk of non-payment does not fall on the sub-contractor and construed the provision as only setting a reasonable time for payment. If parties do intend to shift the risk of non-payment to the sub-contractor, "the contract must unambiguously express that intention;" further, "the burden of clear expression is on the general contractor." Id. at 843. The provisions in this case are ambiguous and must be construed in favor of the sub-contractor. The contracts do not state that the contractor will not be obligated to pay the sub-contractor if the former is not paid by the owner. The language is that no payments shall be made "until" the contractor is paid by the owner. The contracts unambiguously state that the mutual agreement of the parties is "that the sum to be paid by the contractor to the sub-contractor for said work and materials shall be . ." as stated in each contract. Neither is the sub-contractor's payment to be made only out of sums the contractor receives from the owner.[3] In the absence of a clear expression that the contractor would be free of any obligation to pay under the sub-contract if he were not paid by the owner, this provision cannot be held to shift the burden of non-payment to the sub-contractor, and it was entitled to payment within a reasonable time.[4]
Appellant also contests the trial court's award of interest at 6% from May of 1974. The general rule in ex contractu actions is that the person to whom a debt is due is entitled to interest on the debt from its due date. 18A Fla.Jur. Interest, § 6. There are no special circumstances here to justify deviation from that rule.
*594 Appellant relies on Sharpe v. Ceco Corporation, 242 So.2d 464 (Fla. 3d DCA 1970) and Gerber Groves, Inc. v. Belle Glade Agricultural Contractors, 212 So.2d 669 (Fla. 2d DCA 1968). In Gerber, a sub-contractor/plaintiff first sought payment from the prime contractor with whom he had a contract. When the prime contractor was unable to pay, the sub-contractor sued Gerber Groves, which had sold the land improved under the sub-contract in dispute and which was obligated to make the improvements under the sales contracts. The trial court found equitable liens in favor of the sub-contractor. Denying prejudgment interest on cross-appeal, the district court said:
[The sub-contractor] at the outset contracted with and looked to [the prime contractor] for its money. Only after [the prime contractor] "went broke" . . did [the sub-contractor] make claim upon Gerber, who had a litigable position on which to deny liability. Gerber, at 672.
In Sharpe v. Ceco Corporation, 242 So.2d 464 (Fla. 3d DCA 1970), a sub-contractor sought to foreclose a mechanic's lien against the owner and cross-claimed against the general contractor on the contract. The general contractor and the owner counterclaimed for costs of correcting defective work. The sub-contractor was awarded an affirmative judgment after set-off of $20,000 for the counter-claim. The district court affirmed denial of attorney's fees on authority of Gerber Groves, supra, with no further explanation. The facts in this case are not comparable to Gerber, where there was a reasonable dispute over the defendant's liability to pay anything, since Gerber neither owned the land or was in privity with the sub-contractor. Ceco, appellant argues, is applicable because appellant also counter-claimed. However, appellant's counter-claims were not granted. This case is most like Jacquin-Florida Distilling Co. v. Reynolds, Smith and Hills, 319 So.2d 604 (Fla. 1st DCA 1975), in which this court awarded the plaintiff/appellee pre-judgment interest after a contract dispute over the distillery company's liability to pay the architectural firm for engineering services according to the parties' contract. The architects were entitled to "interest on the debt as a result of [the distillery's] failure to pay when due, irrespective of [the distillery's] good faith in contesting the claim." Id. at 608. Snead has contested Avanti's claim in good faith; but, all points being in favor of Avanti, the sum sued for was due within a reasonable time after Snead stopped construction in February, 1974. The trial judge correctly assessed interest from May, 1974.
The trial judge's order on the appellees' motion for attorney's fees stated that they were entitled to "reasonable attorney's fees pursuant to Fla. Stat. § 713.29." Appellants contend that attorney's fees should have been assessed according to Sections 627.756 and 627.428, Florida Statutes (1977). Section 713.29, Florida Statutes (1977), provides that in actions to enforce mechanic's liens under Chapter 713, the prevailing party is entitled to "reasonable attorney's fees." Section 627.428 provides reasonable attorney's fees to an insured who prevails in a suit against an insurer. Section 627.756(2) applies the attorney's fees provision in 627.428 to suits by "owners, subcontractors, laborers and material men ..." against surety insurers on performance or payment bonds. However, that section states further that "the amount ... shall not be more than 12.5% of the amount which the judgment or decree awards such plaintiff under the bond (exclusive of the costs of suit and attorney's fees or compensation)... ."
We agree with appellants that Section 627.756(2) is applicable. Section 624.13 of the Insurance Code states that the code's provisions regarding types of insurance, insurers or as to "a particular matter" prevail over all other such provisions. Sections 627.428 and 627.756 are within the insurance code, and Section 627.756 deals specifically with suits on performance or payment bonds against surety insurers to construction contracts. By mandate of Section 624.13, then, attorney's fees in suits by sub-contractors like appellee against a surety on a performance or payment bond are governed by the specific provisions in 627.756.
*595 Appellees urge that Midway Shopping Mall, Inc. v. Corky Corp., 257 So.2d 905 (Fla. 3d DCA 1972), and Traveler's Indemnity Company v. Howell and King, Inc., 336 So.2d 1 (Fla. 4th DCA 1976) are controlling. In both of those cases it was held that Section 713.29 governed attorney's fee awards in suits by sub-contractors to enforce liens against a general contractor and its surety because the Mechanic's Lien Act was "to be construed liberally to afford laborers and materialmen the greatest protection possible with justice and equity." Midway Shopping Mall, Inc., supra, 257 So.2d at 907. Further, language in the surety agreements, that claimants could sue "for such ... sums as may be justly due," Traveler's Indemnity, supra, 336 So.2d at 3, or obligating the surety to pay "for all labor and material used or reasonably required for use in the performance of the contract, ..." Midway Shopping Mall, supra, 257 So.2d at 908, was said to include the reasonable attorney's fees Section 713.29 provides for.
Here, the parties' contract did not cause the provisions in Section 713.29 to prevail over those in Section 627.756. Language in the surety agreement that claimant could sue on the bond "for all sums justly due ..." is not inconsistent with Section 627.756(2). The legislature has simply further defined what attorney's fees are due such claimants. Nor is Section 627.756(2) inconsistent with the general rule that the mechanic's lien law is to be liberally construed, given its narrow, specific language.
Case No. GG-199 is remanded for an award of attorney's fees consistent with this opinion. AFFIRMED in part; REVERSED in part.
SMITH, Acting C.J., and BOOTH, J., concur.
NOTES
[1] The contract provides: "No payment for work under this agreement shall be made to the Sub-Contractor until the Owner shall have paid the contractor therefor."
[2] See also Aetna Casualty and Surety Co. v. Warren Brothers Co., etc., 355 So.2d 785 (Fla. 1978).
[3] See Frank v. Butte and Boulder Mining and Lumber Co., 48 Mont. 83, 135 P. 904 (1913) (Contract that repayment of loan was to be out of "first earnings of ... business" did not make the debtor generally liable; Campisano v. Phillips, 26 Ariz. App. 174, 547 P.2d 26 (Ariz. App. 1976) (The contract between architect and owner of apartments stated that payment was to be made "out of construction loan draws" and owner was not obligated to pay from any other fund.) Distinguished from Mignot v. Parkhill, 237 Or. 450, 391 P.2d 755 (1964).
[4] See Mignot v. Parkhill, 237 Or. 450, 391 P.2d 755 (1964), cited as part of the majority view the Florida Supreme Court would follow in Peacock Construction v. Modern Air Conditioning, Inc., 353 So.2d 840, 841, n. 6 (Fla. 1977). The disputed contract provision there stated: "[T]he Contractor shall not be obligated to pay Subcontractor for any of the work until such time as Contractor himself receives the money from Bate Lumber Co." Mignot, supra, 237 Or. 450, 391 P.2d at 757.