523 So.2d 1221 (1988)
CHARLES R. PERRY CONSTRUCTION, INC., Appellant,
v.
C. BARRY GIBSON & ASSOCIATES, INC., f/k/a Gibson-Underwood & Associates, Inc., a Florida Corporation, D/B/a Commercial Drywall & Plastering, Appellee.
No. 87-254.
District Court of Appeal of Florida, First District.
April 12, 1988.
Rehearing Denied May 20, 1988.
*1222 Bruce Brashear of Watson, Folds, Steadham, Christmann, Brashear & Tovkach, Gainesville, for appellant.
Stephen B. Rakusin of Rakusin & Ivey, Gainesville, for appellee.
ZEHMER, Judge.
Appellant Charles R. Perry Construction, Inc. (Perry) appeals a final judgment in a construction contract action rendered in favor of the appellee C. Barry Gibson & Associates (Gibson).
The relevant facts are as follows. Sometime prior to October 25, 1983, appellant Perry contracted with Exchange Investments, Inc., to construct improvements to real property owned by Exchange, including the construction of a hotel and parking deck. On October 25, 1983, appellee Gibson entered into a written subcontract with appellant Perry for the installation of interior and exterior drywall to be placed in and on the hotel structure being constructed. Gibson commenced work on the hotel on or about November 30, 1983, and provided labor and materials until October 9, 1984. By November 1, 1984, Perry had paid Gibson $463,812.30, and on June 5, 1985, paid Gibson an additional $55,000. On May 13, 1986, Gibson filed suit against Perry seeking the remaining contract balance of $55,914.70.
In response to the complaint, Perry alleged several defenses: that on June 5, 1985, Gibson and Perry entered into an oral contract whereby Perry paid Gibson $55,000, and Gibson agreed it would not be paid the remaining balance until Perry was paid by the owner; the caulking joints did not conform to acceptable standards and as a result the building was leaking; the exterior color was incorrect; the exterior finish on the decorative columns was not properly reinforced; Perry was entitled to "back charges" for cleanup work performed by Perry, damage caused by Gibson, and work that was not completed by Gibson; and the exterior finish was fading and there was "banding" on the exterior surface of the building.
At a nonjury trial it was established that prior to the bidding and start of construction of the external wall system, Perry and the owner's architect for the project approved Gibson's submittal for use of an STO exterior insulation system rather than the Dryvit exterior system described in the specifications. There was testimony that the substituted STO system was installed by Gibson in accordance with the plans, the manufacturer's specifications, and the approved submittal. Following the presentation of the evidence, which included a view of the hotel, the trial court rendered judgment in favor of Gibson, awarding Gibson the unpaid contract balance plus interest.
On appeal, Perry first contends that Gibson expressly warranted in its subcontract with Perry that the materials it used would be free from defects and that any defects found, whether obvious or latent, were covered by this warranty and Gibson would be liable for the required repairs or damages incurred. Paragraph 8 of the subcontract states:

*1223 The Subcontractor warrants that all new materials and equipment furnished and incorporated by him in the Project shall be new unless otherwise specified, and that all Work under this Subcontract shall be of good quality, free from faults and defects and in conformance with the Contract Documents. All work not conforming to these standards may be considered defective. The warranty provided herein shall be in addition to and not in limitation of any other warranty or remedy required by law or by the Contract Documents.
(R. 119). As previously stated, the architect and the contractor approved the use of an STO exterior insulation system in place of the Dryvit system. Both Dryvit and STO are manufacturer marketed systems, and as such, the contractor's and subcontractor's responsibility is to install the system in accordance with the manufacturer's instructions. Thus, appellee Gibson, by the terms of its warranty, did not warrant the adequacy of the design or specifications of the building wall system; it only warranted that the materials used would be new and acquired from STO, and then be installed properly in accordance with the manufacturer's instructions. Because the record contains competent evidence that Gibson performed its contractual obligations in a workmanlike manner and in accordance with manufacturer's instructions, we find no error in the trial court's decision that defects in the exterior insulation system did not constitute a breach of appellee's written warranty. See Wood-Hopkins Contracting Co. v. Masonry Contractors, Inc., 235 So.2d 548 (Fla. 1st DCA 1970).
Appellant next contends that the court erred in ruling in favor of appellee when the prerequisites for final payment had not been met. Appellant argues that it was not required to pay Gibson until the work had been approved by the architect and owner, and final payment had been received by Perry from the owner. Appellee counters that the payment provisions of the contract were ambiguous and should be interpreted in its favor.
Article 7 of the subcontract, regarding final payment, states:
a. Final Payment shall be due when the Work described in this Subcontract is fully completed and performed in accordance with the Contract Documents, is satisfactory to the Owner and Architect and Final Payment has been made by the Owner to the Contractor.
(R. 117). In Peacock Constr. Co., Inc. v. Modern Air Conditioning, Inc., 353 So.2d 840 (Fla. 1977), the contract provision specified that payment would be due the subcontractor
Within 30 days after the completion of the work included in this sub-contract, written acceptance by the Architect and full payment therefor by the owner.
Id. at 841. Holding this language was ambiguous, the court stated the "intent in most cases is that payment by the owner to the general contractor is not a condition precedent to the general contractor's duty to pay the subcontractors. This is because small subcontractors ... will not ordinarily assume the risk of the owner's failure to pay the general contractor." 353 So.2d 842. In Snead Constr. Corp. v. Langerman, 369 So.2d 591 (Fla. 1st DCA 1978), a similar provision that "no payment for work under this agreement shall be made to the Sub-Contractor until the Owner shall have paid the contractor thereof" was likewise held to be ambiguous and was construed in favor of the subcontractor as not imposing a condition precedent.
The language in Article 7 of the subcontract in this case is also susceptible to different interpretations. It may be interpreted as "setting a condition precedent or as fixing a reasonable time for payment." Peacock at 842. A contractor may require approval and final payment from the owner as a condition to its obligation to pay a subcontractor, but such provision must be clear and unambiguous. In light of the ambiguity of the subcontract provision before us, we find no error in the trial court's ruling in favor of appellee on this point.
Finally, appellant argues that the trial court erred in finding that the caulked *1224 joints were properly constructed and in denying Perry an offset for back charges. Since the record contains competent substantial evidence to support the trial court's findings, we are not at liberty to set them aside and substitute our own findings even though we may well have ruled differently upon the evidence presented. See Atkins v. Keller, 400 So.2d 168 (Fla. 3d DCA), rev. denied, 411 So.2d 380 (Fla. 1981).
AFFIRMED.
BOOTH and WIGGINTON, JJ., concur.