STATESVILLE ROOFING & HEATING CO., INC., Plaintiff,

v.

John R. DUNCAN, d/b/a the Duncan Company, Defendant.

Civ. A. No. ST–C–88–135.

United States District Court, W.D. North Carolina, Statesville Division.

Dec. 22, 1988.

Douglas G. Eisele, Statesville, N.C., for plaintiff.

James R. Bryant, III, Robert C. Dortch, Jr., Womble, Carlyle, Sandridge & Rice, Charlotte, N.C., for defendant.

## MEMORANDUM OF OPINION

RICHARD L. VOORHEES, District Judge.

THIS MATTER came on to be heard and was heard before the undersigned upon plaintiff's motion for summary judgment in Statesville, North Carolina, on December 6, 1988. The Court now enters its opinion in this matter.

This is an action for money owed by Statesville Roofing and Heating Company against proprietorship The Duncan Company, owned by John R. Duncan. The factual background of this case is essentially undisputed. Plaintiff Statesville worked as a subcontractor on a hotel construction project for which Duncan was general contractor. It is agreed that Statesville completed its obligations, did satisfactory work, and is owed $13,647 in addition to money it has already been paid. The sole issue is whether a "pay-when-paid" clause in the parties' written contract serves to establish, as a condition precedent to the sum owed plaintiff Statesville being due and collectible, that the owner of the hotel shall have paid defendant Duncan for his services as general contractor.

The written contract between the parties provides in pertinent part (the pay-when-paid clause):

Final payment shall be paid to the Subcontractor ... conditioned upon payment having been received by the Contractor for all of Subcontractor's Work ...

Defendant argues, in his memorandum in response to plaintiff's motion for summary judgment, that the words "conditioned upon" clearly establish that Duncan's receiving payment from the developer is a condition precedent to his obligation to pay Statesville becoming due and owing. It is certainly true that the everyday meaning of those words, such as a layman might place upon them, leads to the conclusion that the subcontractor need not be paid until the general contractor has received payment. In some jurisdictions, the law agrees; but such is not the law in North Carolina. The trend now in most states is that, absent special circumstances, such language is given no weight. The leading precedent in this jurisdiction is the same.

In a diversity case such as this, the district court must apply the substantive law of the state in which it is located. The leading case in North Carolina is *Howard–Green Electrical Co. v. Chaney & James Construction Co.*, 12 N.C.App. 63, 182 S.E. 2d 601 (1971). In that case, the North Carolina Court of Appeals had to construe a clause which provided that final payment between general and sub was due "within 15 days of acceptance of and payment [to the general contractor] for the entire contract by Owner," to the general. *Id.* at 603. It was held that this language did not create a condition precedent, that instead it only served to specify a time for payment, which was construed as being the time when payment to the general contractor from the owner could reasonably be expected to occur. *Id.* at 604. Although the literal language of the contract appeared to state that payment to the sub was not due until the general had been paid in full, the Court concluded that this was not the intent of the parties and found otherwise. This determination of intent was made by examining the subcontract "in light of the situation of the parties, the end which they sought to accomplish, and against the background of customary practices in the construction industry...." *Id.* at 603. The Court quoted cases with similar results from other jurisdictions to illustrate its reasoning.

A Massachusetts case facially provided for the subcontractor to be paid within thirty days of the general's being paid by the owner:

... In the absence of a clear provision that payment to the subcontractor is to be directly contingent upon the receipt by the general contractor of payment from the owner, such a provision should be viewed only as postponing payment by the general contractor for a reasonable time after requisition ... so as to afford the general contractor an opportunity to obtain funds from the owner.

*A.J. Wolfe Co. v. Baltimore Contractors*, 355 Mass. 361, 244 N.E.2d 717.

A Sixth Circuit decision concerned a subcontract which stated, "... no part of [the subcontractor's fee] shall be due therefor:"

In our opinion, [the five-day clause] is a reasonable provision designed to postpone payment for a reasonable period of after the work was completed, during which the general contractor would be afforded the opportunity of procuring from the owner the funds necessary to pay the subcontractor.... To construe it as requiring the subcontractor to wait to be paid for been paid by the owner, which may never occur, is to give to it an unreasonable construction which the parties did not intend at the time the subcontract was entered into.

*Thos. J. Dyer Co. v. Bishop International Engineering Co.*, 303 F.2d 655 (6th Cir. 1962).

■ Remarkably, it appears that *Howard–Green* is the most recent North Carolina case involving a pay-when-paid clause; there seem to have been no others since 1971. Consequently, this Court will look to other jurisdictions whose cases are not actually precedent to examine the state of the law on this topic. The usual view in courts which hold that it is possible to look beyond the face of the document to the underlying intent of the parties is that the intent can be decided by the court and is not ordinarily a jury issue:

... the general rule is that interpretation of a document is a question of law rather than fact. 4 Williston on Contracts, 3rd Ed., Section 616. If an issue of contract interpretation concerns the intention of parties, that intention may be determined from the written contract, as a matter of law, when the nature of the transaction lends itself to judicial interpretation. A number of Courts, with whom we agree, have recognized that contracts between small subcontractors and general contractors on large construction projects are such transactions ... [the] intent in most cases is that payment by the owner to the general contractor is not a condition precedent to the general contractor's duty to pay the subcontractors. This is because small subcontractors, who must have payment for their work in order to remain in business, will not ordinarily assume the risk of the owner's failure to pay the general contractor. And this is the reason for the majority view in this country, which we now join.

*Peacock Construction Co. v. Modern Air Conditioning, Inc.*, 353 So.2d 840, 841 (Fla. 1977). Since the *Howard–Green* Court did in fact decide the question of intent itself, it is the law in North Carolina that the court has that right. Thus, it is clear that this Court can, without the aid of a jury, find from the record that the sum owed plaintiff is presently collectible.

■ Defendant presents several arguments for why this should not be the result. He points to the specific language of the contract, which contains the word "conditioned," a word not used in *Howard–Green* and other similar cases. The idea is that the word should be considered as shorthand for "condition precedent," and, therefore, should be construed as creating one. This is unpersuasive. The gist of this line of cases is that the literal language need not be enforced; up to a point it should not matter what specific words are used.

Defendant also points to *Peacock Construction Co. v. A.M. West*, 111 Ga.App. 604, 142 S.E.2d 332 (1961). This case is said to stand for the proposition that language similar to that used in the contract in question can be interpreted in defendant's favor. And so it does. The only problem is that it represents Georgia, not North Carolina, law. Georgia has a long line of cases holding that pay-when-paid clauses in written contracts must be taken

literally; *see, e.g., St. Paul Fire & Marine Insurance v. Georgia Interstate Electric,* 187 Ga.App. 579, 370 S.E.2d 829 (Ga.1988). Indeed, were this Court required to apply Georgia law, defendant would prevail here. However, Georgia is a minority view state, while North Carolina holds to the majority view. As the Court in *Peacock v. Modern Air* said, "... the view of the majority of jurisdictions (here the Court cited numerous other state cases in support, including *Howard–Green* as representing the North Carolina view) in this country [is] that provisions of the kind disputed here do not set conditions precedent but rather constitute absolute promises to pay, fixing payment by the owner as a reasonable time for when payment to the subcontractor is to be made." 353 So.2d at 841.

Defendant cites one majority-view case as supporting the result he urges. To the contrary, it appears to favor plaintiff's position. This is the Florida case of *Robert F. Wilson, Inc. v. Post–Tensioned Structures,* 522 So.2d 79 (Fla.App. 3 Dist.1988). The general contractor did win in that case, but observe the contractual language, as quoted in the opinion:

> In the event a controversy occurs between the Owner and the General Contractor concerning the Contract with the Owner ... it is *expressly agreed* that no compensation for these items shall be due the Subcontractor *until* payment for them is *received by the Contractor, regardless* of the fact that payment is *delayed* due to the Contractor negotiating with the Owner, arbitration, administrative actions, litigation, appeals or other similar activities.

522 So.2d at 80. (Emphasis added.) The difference between the language in this case and the case at bar is significant. The parties in *Robert F. Wilson* had obviously read *Peacock v. Modern,* in which the Supreme Court of Florida observed, "[t]here is nothing in this opinion, however, to prevent parties to these contracts from shifting the risk of payment failure by the owner to the subcontractor. But in order to make such a shift the contract must unambiguously express that intention." 353 So.2d at 842. That was the standard

one majority-view jurisdiction imposed, and it is clear the parties used the demanded highly specific language in order to meet it. This Court believes the Supreme Court of North Carolina would impose a similar standard if it considered the question.

It appears to be the normal rule in majority-view states that language similar to that in *Robert F. Wilson* needs to be present before the financial risk can be shifted to the subcontractor. One would expect such language to be conjoined with words committing the general contractor to do its utmost to collect from the owner, such as to assert lien rights in timely fashion and the like, thereby protecting the collection rights of the subcontractor. Nothing in the present case indicates the parties went that far. To the contrary, the pay-when-paid clause here was a boilerplate provision in a standard printed form supplied by defendant. Defendant has not pleaded any extrinsic evidence to show that the parties specifically contemplated and agreed that the subcontractor would bear the risk of nonpayment by the owner. In short, the facts in support of defendant's position are about as weak as they ever are in a dispute of this kind. It is clear from the case law that in other majority-view states plaintiff would prevail on these facts, and there is no reason to think the North Carolina Supreme Court would hold otherwise.

The North Carolina General Assembly specifically considered the question of contractor-subcontractor relations last year. The result was N.C.G.S. Chapter 22C, titled "Payments to Subcontractors." Section 22C–2 thereof specifies that:

> Performance by a subcontractor in accordance with the provisions of its contract shall entitle it to payment from the party with whom it contracts.

This does not specifically address the issue of time for payment. Section 22C–3, titled "Time of payment to subcontractors after contractor or other subcontractor has been paid," does so:

> When a subcontractor has performed in accordance with the provisions of his con-

tract, the contractor shall pay to his subcontractor ... within seven days of receipt by the contractor ... of each periodic or final payment, the full amount received for such subcontractor's work ...

This addresses only the issue of what is to be done when the general has already been paid. It says nothing about what happens when the owner does not pay. In effect, it sets an outer boundary for payment to the subcontractor of seven days after the general contractor has been paid; it does not eliminate the possibility that the sub may be entitled to payment earlier than that. Certainly, if the legislature had intended to overturn the rule established by *Howard–Green*, it would have done so in unmistakable language.

In view of the above, the pleadings and other materials make clear that there is no genuine issue of material fact to be presented to a jury. Summary judgment for plaintiff is, therefore, appropriate.

The remaining issue is the question of interest on the sum owed. Plaintiff requested eight percent interest from March 26, 1988, that being the date when payment was demanded. Defendant did not dispute this in his answer. This seems to be fair to defendant in view of the fact that plaintiff apparently completed work some months beforehand; he might well have asked for more.

Judgment for plaintiff in the amount of $13,647, interest to be calculated at the rate of eight percent from March 26, 1988, will be filed contemporaneously with this Memorandum.