558 So.2d 427 (1990)
DEC ELECTRIC, INC., Petitioner,
v.
RAPHAEL CONSTRUCTION CORPORATION, Respondent.
No. 73938.
Supreme Court of Florida.
March 22, 1990.
Alexander J. Williams, Jr. and Alan C. (Peter) Brandt, Jr. of Chappell & Brandt, P.A., Fort Lauderdale, for petitioner.
Stuart H. Sobel and Martin A. Feigenbaum of Sobel & Sobel, P.A., Miami, for respondent.
McDONALD, Justice.
We review DEC Electric, Inc. v. Raphael Construction Corp., 538 So.2d 963 (Fla. 4th DCA 1989), in which the district court certified the following question as one of great public importance:

*428 Must all payment provisions in contracts between contractors and subcontractors or suppliers that concern a condition or time of payment provision be construed as a matter of law?
Id. at 965. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer the certified question in the affirmative and approve the result reached by the district court.
This suit involves a subcontractor's claim for moneys due for work done on a construction project when the general contractor refused to pay because it had not been paid by the owner. DEC Electric, Inc. (DEC), subcontracted with Raphael Construction Corporation, the general contractor, to perform various electrical jobs on a construction project. The owner subsequently shut down the project. It is undisputed that DEC satisfactorily performed its work and is owed a total of $25,612 plus interest. Raphael Construction refused to pay DEC, however, because it had not been paid by the owner. To support its refusal to pay DEC, Raphael Construction relied upon paragraph 6 of the subcontract, which states:
Upon final payment a sworn statement with supporting waiver of lien from your material suppliers and/or subcontractors must be furnished with your final waiver of lien. A sworn statement must be furnished to us listing major material suppliers and subcontractors and the amounts of their contracts at the time of first payout. Interim payments require partial waivers with supporting material supplier's waivers in exchange for payment. Your payments are made in accordance with our interim draws as we show you on our sworn statement with your percentage of completion as we estimate it at the time of our billing to the Owner. [Emphasis in original.] This may not conform to your billing to us. No funds will be owed to the subcontractor unless the General Contractor is paid by the owner in accordance to the sworn statement. The subcontractor fully understands that in event of non payment by the owner to the General Contractor, the subcontractor has legal recourse against the owner through the Mechanics Lien Laws or other legal procedures for their correct monies due.

(Emphasis added.)
The trial court held, as a matter of law, that DEC was not entitled to payment from Raphael Construction because paragraph 6 of the subcontract unambiguously required payment from the owner to Raphael Construction before payment became due to DEC. The district court affirmed, finding no fault in the trial court's construction of the plain meaning of that paragraph. On the other hand, in reaching its decision the district court expressed concern that the trial court decided the issue as a matter of law rather than submitting it to the jury. It found paragraph 6 somewhat confusing and ambiguous and stated that ordinarily such ambiguity should be resolved by the trier of fact based upon any evidence that the parties set forth to resolve the ambiguity and determine their intent. DEC Electric, 538 So.2d at 965. The district court, however, believed that Peacock Construction Co. v. Modern Air Conditioning, Inc., 353 So.2d 840 (Fla. 1977), may have precluded determining the issue as a matter of fact and certified the aforementioned question to this Court as a matter of great public importance.
Ordinarily the interpretation of a written contract is a matter of law to be determined by the court. Peacock, 353 So.2d at 842; City of Leesburg v. Hall, 96 Fla. 186, 191, 117 So. 840, 841 (1928); City of Orlando v. H.L. Coble Construction Co., 282 So.2d 25, 26 (Fla. 4th DCA), cert. denied, 288 So.2d 505 (Fla. 1973); 4 S. Williston, A Treatise on the Law of Contracts § 616 (3d ed. 1961). Raphael Construction argues that, when the terms of a contract are ambiguous, the actual intention of the parties becomes a question of fact to be resolved by the jury. Although this principle of law is correct in most situations, we have declined to apply it to contracts between contractors and subcontractors in reference to risk-shifting provisions. In Peacock this Court held that the interpretation *429 of contract provisions relative to time and conditions of payment between a contractor and subcontractor is a question of law and not of fact. 353 So.2d at 842. Although we acknowledged that the meaning of language was generally a factual question, we rejected submitting the issue to the jury because
[i]f an issue of contract interpretation concerns the intention of the parties, that intention may be determined from the written contract, as a matter of law, when the nature of the transaction lends itself to judicial interpretation. A number of courts, with whom we agree, have recognized that contracts between small subcontractors and general contractors on large construction projects are such transactions. The reason is that the relationship between the parties is a common one and usually their intent will not differ from transaction to transaction, although it may be differently expressed.

That intent in most cases is that payment by the owner to the general contractor is not a condition precedent to the general contractor's duty to pay the subcontractors. This is because small subcontractors, who must have payment for their work in order to remain in business, will not ordinarily assume the risk of the owner's failure to pay the general contractor.
Id. (emphasis added, citation omitted).
Moreover, Peacock clearly holds that risk-shifting provisions are susceptible to only two possible interpretations. If a provision is clear and unambiguous, it is interpreted as setting a condition precedent to the general contractor's obligation to pay. If a provision is ambiguous, it is interpreted as fixing a reasonable time for the general contractor to pay. In purported risk-shifting provisions between a contractor and subcontractor, the burden of clear expression is on the general contractor. Once a judge decides that a provision is ambiguous there is nothing for the jury to decide or interpret.
In Aetna Casualty & Surety Co. v. Warren Brothers Co., 355 So.2d 785 (Fla. 1978), this Court again found the interpretation of risk-shifting provisions a matter of law to be decided by a judge.[*] In that case we recognized Peacock as controlling even though the suit was against a surety under the terms of a payment bond instead of against the general contractor. We find no reason to recede from Peacock and Aetna Casualty, and we hold that in the case at bar the interpretation of paragraph 6 of the subcontract is a matter of law and not a matter of fact to be resolved by a jury.
Therefore, we answer the certified question in the affirmative. We find the contract provision to be unambiguous and therefore approve the result reached by the district court of appeal.
It is so ordered.
EHRLICH, C.J., and OVERTON, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[*] In our recent decision in OBS Co. v. Pace Construction Corp., 558 So.2d 404 (Fla. 1990), we also held that the interpretation of such risk-shifting provisions was a matter of law and not a matter of fact to be submitted to the jury, in effect, reaffirming our holdings in Peacock Construction Co. v. Modern Air Conditioning, Inc., 353 So.2d 840 (Fla. 1977), and Aetna Casualty & Surety Co. v. Warren Brothers Co., 355 So.2d 785 (Fla. 1978), albeit our decision in OBS did not turn on that issue.