WIGGINTON, Judge.
Prestige Properties, Inc. (Prestige), a licensed real estate broker, brings this appeal from a final judgment styled “Summary Judgment for Defendants Judgment on the Pleadings for Defendants.” The .paramount issue for our consideration is whether the contract entered into between Prestige and Gainesville Associates Group, Ltd. (Gainesville Associates) for the payment of a real estate brokerage commission due Prestige clearly and unambiguously established the buyer’s payment of the purchase money note as a condition precedent to Gainesville Associates’ obligation to pay the brokerage commission to Prestige. For the following reasons, we reverse and remand for further proceedings.
Taking, as we must, all well-pleaded allegations of Prestige’s complaint as true,[1] the evidence shows that Gainesville Associates owned certain real property in Ala-chua County and, prior to June 1986, entered into an oral brokerage contract with Prestige to sell the property. Gainesville Associates agreed to pay Prestige a commission of five percent of the purchase price if the property were sold as a result of Prestige’s negotiations.
On June 17, 1986, Gainesville Associates entered into a contract to sell the property. A portion of the sales price was to be financed by Gainesville Associates, and Prestige orally agreed to delay receipt of its five percent commission on the amount financed until the note was paid. The sale closed and the property was transferred, at which time a portion of the purchase price was paid in cash, with Gainesville Associates accepting as partial payment two notes and mortgages in the respective amounts of $1,727,676 and $653,400. Prestige was paid a five percent commission on the amount paid in cash. At that time, there remained due to Prestige a commission of $119,053.80.
By letter agreement of January 16, 1987, Gainesville Associates acknowledged that the property was sold as a result of Prestige’s negotiations, and that it was obliged to pay Prestige a commission as a result. The letter agreement went on to set forth the balance due on that commission and stated the following:
We [Gainesville Associates] agree that we will pay you [Prestige] the balance of this commission within 15 days of our receipt of the balance of the purchase monies due us, pursuant to the two Purchase Money Notes and Mortgages which we received at closing, together with such interest thereon at the same rate as we receive on the deferred purchase monies.
Ultimately, the $653,400 note was satisfied and Gainesville Associates paid Prestige a portion of the additional commission due. Unfortunately, the purchaser thereafter defaulted on the remaining note and mortgage. As a result, Gainesville Associates elected to sue on the note for a money judgment rather than foreclose on the mortgage, and, on August 2, 1988, received a judgment for $1,712,541.76. The purchaser subsequently satisfied the judgment by reconveying the disputed property to Gainesville Associates, along with additional property owned by the purchaser and located in Duval County.
When Gainesville Associates received satisfaction of the judgment, Prestige demanded payment of the remainder of the commission due. Gainesville Associates refused.
Consequently, on January 28, 1991, Prestige filed a one count complaint seeking damages for breach of contract. Gaines-ville Associates answered, and then filed a motion for summary judgment and for judgment on the pleadings, taking the position that the above-referenced portion of *96 the letter agreement conditioned Prestige’s receipt of the remainder of its commission on Gainesville Associates’ receipt of “the specific funds due and payable under the purchase money mortgages.” As urged by Gainesville Associates, since that obligation was never satisfied, Prestige was not entitled to a brokerage commission on the remaining portion of the transaction, and the trial court should, accordingly, enter judgment as a matter of law in its favor.
Prestige responded by arguing, in part, that Gainesville Associates had failed to establish the absence of a disputed issue of fact and that the court could not determine as a matter of law that its right to receive payment was so conditioned by the letter agreement. Rather, it was Prestige’s position that the letter agreement recognized an established preexisting obligation to pay, and merely set forth the time of payment.
On October 25, 1992, the trial court entered its “Summary Judgment for Defendants Judgment on the Pleadings for Defendants,” finding that “the reconveyance of this real estate was not ‘payment’ to the defendant/seller which would entitle Plaintiff to a brokerage commission on that portion of the transaction.”
On appeal, Prestige raises three issues, only one of which we treat as dispositive; that being, whether the letter agreement clearly and unambiguously established payment of the purchase money note and mortgage as a condition precedent to Gaines-ville Associates’ obligation to pay the brokerage commission to Prestige. For the following reasons, we answer that question in the negative.
The language in the instant letter agreement is very similar to the language that was at issue in Peacock Construction Co., Inc. v. Modern Air Conditioning, Inc., 353 So.2d 840 (Fla.1977), wherein the supreme court observed that “[t]he contractual provisions and dispute here are susceptible to two interpretations. They may be interpreted as setting a condition precedent or as fixing a reasonable time for payment.” Id. at 842. The court admitted that the meaning of language is generally a factual question, but went on to observe “the general rule” as being “that interpretation of a document is a question of law rather than of fact.” Id. (Citation omitted). The court then stated:
If an issue of contract interpretation concerns the intention of parties, that intent may be determined from the written contract, as a matter of law, when the nature of the transaction lends itself to judicial interpretation.
Id. (Emphasis added). In that respect, the court agreed with a number of courts recognizing that contracts between subcontractors and general contractors on large construction projects are such “transactions” falling within the rule, for the reason “that the relationship between the parties is a common one and usually their intent will not differ from transaction to transaction, although it may be differently expressed.” Id. However, the court was careful to emphasize that its decision was simply a recognition of a fairer way to deal with the problem before it, but, significantly, observed the following:
There is nothing in this opinion, however, to prevent parties to these contracts from shifting the risk of payment failure by the owner to the subcontractor. But in order to make such a shift the contract must unambiguously express that intention. And the burden of clear expression is on the general contractor.
Id., 842-43 (Emphasis added). See also OBS Company, Inc. v. Pace Construction Corporation, 558 So.2d 404 (Fla.1990).
Turning to the instant case, we too, are faced with a contractual provision which, if interpreted as urged by Gaines-ville Associates, would serve to shift the risk of nonpayment by the purchaser to Prestige, despite the fact that Prestige had clearly performed its obligation under the initial brokerage agreement, and even though Gainesville Associates had acknowledged the full amount of its debt to Prestige for the brokerage fee. Based on the principles enunciated in Peacock, if the parties intended to thereafter shift the risk of nonpayment from Gainesville Associates to Prestige, certainly the language in the let *97 ter agreement does not unambiguously express that intention. We have been presented no cogent reason why the policy considerations underlying the principles announced in Peacock and reiterated in OBS should not apply to the circumstances of the instant transaction, since Prestige had fully performed its part of the bargain and was admittedly due its brokerage fee in full prior to the making of the letter agreement on which Gainesville Associates now relies. To change the original undertaking in respect to payment of a fee already earned and admitted to be due so as to shift the risk of nonpayment from the obli-gor to the obligee simply must be accomplished by a clear and unequivocal expression of intent. Thus, in construing the purported risk-shifting provision, “the burden of clear and unequivocal expression” was on Gainesville Associates. OBS, 558 So.2d at 406. Since Gainesville Associates failed to carry that burden based on the provisions in the letter agreement, the disputed clause can be read only as one establishing a time for payment. Consequently, the trial court erred in holding as a matter of law that a condition precedent had been intended by the parties.
In view of this disposition, we need not consider whether Gainesville Associates’ reducing the defaulted note payment to a judgment and its acceptance thereafter of several parcels of real property in full satisfaction of that amount would nevertheless constitute payment of the note, requiring immediate payment of the brokerage fee to Prestige under the terms of the letter agreement. Our construction of that agreement precludes our having to address the notion that Gainesville Associates has merely avoided paying the brokerage fee, although it has received the monetary equivalent of full payment of the note.
The trial court’s final judgment is REVERSED, and the cause is REMANDED for further proceedings consistent with this opinion.
ERVIN and ZEHMER, JJ., concur.

. Reinhard v. Bliss, 85 So.2d 131 (Fla.1956); White v. Strange, 237 So.2d 16 (Fla. 1st DCA 1970).