497 So.2d 901 (1986)
Harry B. ZEPFLER and Maureen F. Zepfler, Appellants,
v.
Bruce NEANDROSS, John Palace and Linda G. Mates, Appellees.
No. 85-2580.
District Court of Appeal of Florida, Fourth District.
October 15, 1986.
As Corrected on Denial of Rehearing November 26, 1986.
John K. Eastham, Jr., Boca Raton, for appellants.
Thomas L. Brown, North Palm Beach, for appellees.
GLICKSTEIN, Judge.
This is an appeal of final judgment in an interpleader case. We reverse and remand with direction to enter judgment for appellants.
Maureen F. and Harry B. Zepfler were out of state residents who agreed to buy a townhouse in Ocean Cove, Jupiter, belonging to Bruce Neandross and John Palace. The real estate broker was Linda Mates. A sale/purchase agreement, entered into on May 6, 1984, called for a price of $83,000 and a deposit of 10%, or $8,300. There would be a third party loan for $66,000 and additional cash of $8,700 at closing.
Article III of the agreement stated that the sale contract was conditioned on the buyer's obtaining within fifty days a firm thirty-year mortgage loan commitment for $66,000 at an interest rate not to exceed 13 1/2%. The provision said the buyer would apply for such a loan and use reasonable diligence to obtain it. Either party could cancel if the buyer could not get the mortgage loan, or failed to waive the provision. The contract had to be approved by all parties by May 15, 1984, and closing was to be August 3, 1984. If the buyers were responsible for any delay after the stated *902 closing date they were to pay $25.00 for each day of the delay.
The Zepflers applied for a mortgage loan to United Federal, a division of California Federal. On July 2, 1984, the Zepflers' attorney wrote the sellers' attorney, saying that Zepfler was cancelling the agreement because he could not obtain a fixed rate mortgage of 13 1/2% for thirty years, as conditioned in the contract. The sellers refused to return the deposit, and the Zepflers filed a complaint. The broker, who held the deposit, filed a counterclaim for interpleader, which the court granted. The sellers/defendants filed a general denial and a counterclaim for the deposit. The sellers/defendants claimed the deposit as liquidated damages under the sale/purchase agreement, contending the loan commitment met the mortgage contingency clause of the agreement. The buyers/plaintiffs entered a general denial. The case was set for trial.
Attorneys for both sides signed a pretrial stipulation prepared by plaintiffs' attorney. The stipulated facts included that the agreement had been entered, that the mortgage loan commitment provision was in the contract, and that a commitment had been received for an adjustable rate mortgage at an initial rate of 13% for thirty years with a 2 1/2% cap. The principal amount of the loan commitment mentioned in the contract and the principal amount of the commitment made to the plaintiffs by United Federal were not mentioned in the stipulation. A stipulated issue was whether the contract condition calling for a firm thirty year loan commitment at a rate not to exceed 13.5% was satisfied by the adjustable rate mortgage commitment at an initial rate of 13% with a 2.5% cap.
Testimony at trial showed that the realtor actually was given the task of finding financing. The Zepflers filled out the application and supplied the necessary information.
The defendants contended that the adjustable rate mortgage commitment of July 2, 1984, under which the mortgage rate could be as high as 15.5% during the mortgage term, did not satisfy the contract provision. We agree. A lawyer, Eugene E. Shuey, who has had extended experience as attorney for a savings and loan association, and has done other loan closings for banks or savings and loans, testified that in his opinion the commitment for a $43,000 or $44,000 loan on an adjustable rate mortgage at 13% with a 2 1/2% cap on adjustments complied with the commitment condition in the contract. The principal amount of the loan offer was not in issue, as the application was for that amount.
Richard Wachtel, a former employee of California Federal, testified at the time the commitment was sought for the Zepflers the lender was granting both fixed rate and adjustable rate mortgages. As the application for the Zepflers did not say "Adjustable Plan," he would assume the application was for a fixed rate mortgage. The same application form was used for both types of mortgages. The truth-in-lending statement received by the Zepflers appeared to him to be for a fixed rate mortgage. That is not a commitment, however. A letter of June 13, 1984, over his signature, announcing a rise in the interest rate on mortgages, was not a loan commitment. He could not see why the company would not have been willing to give the Zepflers a fixed rate mortgage if they had pointed out, after receiving the commitment letter, that that is what they had wanted.
There were subsequent commitment letters also.
Mr. Zepfler testified he had filled in the blank terms of the mortgage loan commitment provision. These were the terms 13.5% and 30 years.
In its oral ruling, the trial court held that the contract makes no indication whether the commitment to be obtained would be for a fixed rate or an adjustable rate mortgage; that Zepfler knew both types exist, but did not specify a type "in the provision he placed in the contract." The court also indicated the buyers/plaintiffs' effort to obtain a mortgage commitment was inadequate because they relied entirely on the *903 realtor, and fixed rate mortgages were at the time available from the same lender.
The pretrial stipulation stated the issue to be tried was "[w]hether the Contract condition calling for a firm committment [sic] for a loan at an interest rate not to exceed 13.5%; term of thirty (30) years; was satisfied by the plaintiff receiving an adjustable rate mortgage committment [sic] at an initial interest rate of 13% with a 2.5 cap." This is not the same question as "whether an adjustable rate mortgage satisfied the contingency clause," as stated in the final judgment, unless the court there was referring to the particular mortgage commitment made by the lending agency here.
We shall address some tangential matters which do not affect the basic conclusion we reach on this issue, but which reflect what appear to us to be errors by the trial court.
The trial court appears to be saying that appellant Mr. Zepfler supplied the loan commitment contingency provision of the sale/purchase agreement, and that therefore, if he wanted a fixed rate mortgage, he should have said so. The principal language of the provision in fact comes from the form supplied by the sellers' realty agent  the standard form approved by the Florida Association of Realtors. All that appellant did was fill in two tiny blanks in article III: the interest rate, 13.5, and the mortgage term of years, 30. There was no space provided for indicating mortgage type; and since the buyer did not in fact supply the provision, there is no reasonable basis for laying the problem of mortgage type at his door. Surely realty agents are better aware than occasional buyers of the fact that fixed rate mortgages no longer virtually monopolize the mortgage market; if this aspect of the provision is deemed ambiguous, which we seriously question, that is not appellant's fault.
Next, one may reasonably reason that this aspect of the provision is not ambiguous. It refers to "an interest rate not to exceed 13.5%; term of 30 years." This language suggests a single interest rate for the entire term, which means, of course, a fixed rate mortgage. Moreover, while the expert witness, Mr. Wachtel, spoke of the mortgage application, rather than this agreement, it appears from his testimony that in the trade a buyer is customarily assumed to be asking for a fixed rate mortgage if he does not request a variable or adjustable rate mortgage.
These matters are not, however, essential in deciding this issue. Assuming, arguendo, that the mortgage commitment provision can be read as making the type of mortgage  fixed versus adjustable interest rate  optional, it is clear that a mortgage commitment that says, in effect, you may have a mortgage in which the initial rate is 13%, but the rate may at some time during the mortgage term be as high as 15.5%, is not a commitment for a mortgage at an interest rate not to exceed 13.5%.
In summary, we say that construction of a written document, such as a contract, presents a question of law, Jaar v. University of Miami, 474 So.2d 239, 242 (Fla. 3d DCA 1985) (citing, inter alia, Peacock Construction Company v. Modern Air Conditioning, Inc., 353 So.2d 840, 842 (Fla. 1977)), if its language is clear and unambiguous, id. (citing, inter alia, Friedman v. Virginia Metal Products Corp., 56 So.2d 515, 516 (Fla. 1952)). The pertinent language of both the contract provision and the mortgage commitment in the instant case is clear and unambiguous. As a matter of law, we find that the mortgage loan commitment failed to fit within the limitations set up by the contingent provision of the sale/purchase agreement.
DELL and STONE, JJ., concur.

ON MOTION FOR REHEARING
GLICKSTEIN, Judge.
Regrettably and inexplicably, the word "not" insinuated itself into a sentence in the opinion of October 15, 1986, describing the expert testimony of Eugene E. Shuey. The pertinent sentence, found in the seventh *904 paragraph, should read, and is hereby corrected to read, as follows:
A lawyer, Eugene E. Shuey, who has had extended experience as attorney for a savings and loan association, and has done other loan closings for banks or savings and loans, testified that in his opinion the commitment for a $43,000 or $44,000 loan on an adjustable rate mortgage at 13% with a 2 1/2 cap on adjustments complied with the commitment condition in the contract.
Nevertheless, rehearing is denied, inasmuch as the holding in this case was based on matters of law, and not on the expert testimony of this or other expert witnesses.
DELL and STONE, JJ., concur.