731 So.2d 145 (1999)
NEW NAUTICAL COATINGS, INC., a Florida corporation, Appellant,
v.
Daniel R. SCOGGIN, and Broward Marine, Inc., a Florida corporation, Appellees.
No. 98-0801.
District Court of Appeal of Florida, Fourth District.
April 28, 1999.
David A. Bacon of Bacon, Bacon, Johnson & Goddard, P.A., St. Petersburg, for appellant.
No brief filed for appellees.
GROSS, J.
Appellant, New Nautical Coatings, Inc. (Nautical), a co-defendant in the non-jury trial below, appeals a final judgment arising out of a breach of express warranty count in the complaint filed by appellee, Daniel Scoggin, the plaintiff in the trial court. This case involves a warranty on protective coatings of paint manufactured by Nautical for use on the bottom of vessels. The vessel affected by this case is a *146 77-foot sailing vessel called the "Jubileum." In count II of his complaint, Scoggin alleged that Nautical "failed and refused to abide by the terms of its express warranty and Scoggin has been damaged by such failure."[1]
Because the trial court made no specific findings of fact in the final judgment, this court must "accept the facts to be those shown by that evidence most favorable" to Scoggins, the prevailing party. Southern Bell Tel. & Tel. Co. v. Broward County, 665 So.2d 272, 274 (Fla. 4th DCA 1995); see NCNB Nat'l Bank of Florida v. Aetna Cas. & Sur. Co., 477 So.2d 579, 583 (Fla. 4th DCA 1985). We find that the record supports the trial court's conclusion that Nautical breached its express warranty, but that the damages awarded exceed those amounts provided for in the warranty.
In the summer of 1994, the vessel was put into dry dock at co-defendant, Broward Marine's (Broward), facility in Ft. Lauderdale. Scoggin paid Broward approximately $5,000 to do a "bottom job" on his vessel. A bottom job is basically a final paint job which prevents barnacles from growing on the bottom of the vessel. A bottom job normally includes sandblasting the vessel's steel hull down to the bare steel before applying the protective coats of paint.
Nautical manufactures primers and antifouling paints for the use on boat bottoms. Under the general brand name, "Sea Hawk," Nautical produces antifouling coatings called "BioCop" and "Cukote." In 1994, these coating products were sold to Broward and used upon the "Jubileum."
Nautical's products came with an express warranty which provided in pertinent part that Nautical "will warranty that when our products, `CUKOTE' and `BIOCOP' antifoulant coatings are applied in the correct manner, as described in our technical brochures, the coating will remain intact and not show any barnacle growth on the coating for the period of one year (12 months)."
The warranty stated:
Detailed instructions for the preparation and application of CUKOTE and BIOCOP are contained in the technical bulletins for these products and must be followed carefully. Copies of these bulletins and a bulletin titled "Care and Cleaning of Sea Hawk Antifoulants" are included as part of this warranty.
If Nautical's antifoulants "fail by exhibiting excessive growth or marine organisms including barnacles or zebra mussels within one year of application of these coatings," Nautical will:
1. Pay the marina or boat repair yards the COST of hauling and blocking.
2. Supply free of charge the necessary coatings to recoat the hull.
The warranty continued:
This warranty covers CUKOTE and BIOCOP products manufactured by Nautical Coatings Inc. when these coatings are applied over properly cleaned bare surfaces or over our recommended primers. We do not warranty these products when applied directly over competitive or unknown coatings. Nautical Coatings Inc.'s liability is limited to replacing materials and issuing credit or payment to the applicator at his COST (time and materials) for correcting the failure.
(Emphasis supplied).
Approximately three months after Broward did the bottom job, Nautical was informed that the coating was not adhering properly to the bottom of the vessel. Eric Nori, the owner and managing director of Nautical, testified that he inspected *147 the vessel. He discovered that the Sea Hawk products were not adhering to the previously existing layers upon the hull, which were also coming off the vessel. Mr. Nori believed that this problem arose because the hull of the vessel had not been sandblasted down to the bare steel. Nautical provided replacement paint without cost to Broward.
For the second bottom job, the vessel's bottom once again was not sandblasted down to bare steel. Instead, Broward "sand swept" the bottom, a form of sandblasting that does not remove all the paint down to the bare metal. This was done because Scoggin did not want the added expense of the sandblasting. Even though this procedure was contrary to Nautical's recommended procedure and to the terms of the express warranty, David Morrison of Nautical approved applying Sea Hawk paint after the sand sweeping, after Morrison had performed a test patch. Morrison expressly told a Broward employee, "yeah, go ahead and apply it and they [Nautical] would warranty it." Scoggin testified that the Nautical representative was "calling all the shots and donating the paint."
After Broward completed the second Sea Hawk paint job, a diver cleaning the bottom of the vessel informed Scoggin's captain that the bottom of the boat was bubbling. Nautical was contacted and told "your system completely failed, it's falling off all over the place and we need twenty or thirty thousand dollars to fix it." Rolly Marine sandblasted the vessel and repaired the damage done to the bottom as a result of the two prior bottom jobs and did a new bottom job using Devoe brand epoxy paint on top of the bare metal. Rolly Marine applied an antifouling coat, which may have been Sea Hawk brand according to Peter Campo, a former employee from Rolly Marine. The bottom of the vessel has been fine ever since and the vessel was sold three months before trial.
For the second bottom job, Nautical provided replacement paint free of charge even though Nautical was aware that the vessel's bottom had not been sandblasted down to bare steel. We find that Morrison's oral statement that Nautical would warranty its products after the sand sweeping of the vessel (as opposed to sandblasting down to the steel hull) modified and expanded Nautical's written express warranty. See § 672.313, Fla. Stat. (1997) (creation of express warranty). The Uniform Commercial Code Comments to Florida Statutes Annotated section 672.313 states:
7. The precise time when words of description or affirmation are made or samples are shown is not material. The sole question is whether the language or samples or models are fairly to be regarded as part of the contract. If language is used after the closing of the deal (as when the buyer when taking delivery asks and receives an additional assurance), the warranty becomes a modification, and need not be supported by consideration if it is otherwise reasonable and in order (Section 2-209).
The evidence supports the conclusion that Morrison's oral representation extended the previously supplied written express warranty to the second paint job. See §§ 672.316(1), 672.317, Fla. Stat. (1997).
While we affirm the trial court's finding of a breach of an express warranty, we remand for another assessment of damages. The express warranty limited recovery to three categories of damage-the boatyard's cost of hauling and blocking the vessel, the cost of the coatings necessary to recoat the hull, and the applicator's "COST (time and materials) for correcting the failure." The final judgment awarded $14,850.00 in damages against Nautical. There is no evidence, consistent with the warranty, which supports this amount. The evidence reflects that the cost of the antifouling coats was $1,535.00 and that the charge for hauling the boat was $539.00, for a total of $2,074.00. From this record it cannot be determined what amount of the remaining damages awarded *148 can be fairly allocated to the time and materials attributable to "correcting the failure," not including other work done by Rolly Marine which appears on the invoice, but which falls outside the limitation of the warranty. We note that Broward Marine charged about $5,000 to do the bottom job the first time, including the coatings and materials, and just under $2,000 to do it a second time, not including coatings and materials.
Affirmed in part, reversed in part, and remanded.
DELL and KLEIN, JJ., concur.
NOTES
[1] Scoggin filed his complaint against co-defendants Broward Marine and New Nautical on May 15, 1996. The trial court granted a directed verdict in favor of Nautical on count III, involving breach of implied warranty of merchantability and the case proceeded on count I against Broward for breach of contract and on count II against Nautical for breach of express warranty. Broward is not a party to this appeal.