924 So.2d 872 (2006)
Guy D'AMICO, Appellant,
v.
William BRIGHTFELT, Appellee.
No. 4D05-1672.
District Court of Appeal of Florida, Fourth District.
March 1, 2006.
Rehearing Denied April 11, 2006.
Julie K. Oldehoff of Oldehoff Law Offices, P.A., Stuart, for appellant.
Rickey L. Farrell of Rickey L. Farrell, Attorney At Law, P.A., Port St. Lucie, for appellee.
GROSS, J.
Guy D'Amico, the buyer, appeals a final judgment denying him specific performance of a residential real estate contract against William Brightfelt, the seller. We affirm, holding that the seller was justified in terminating the contract because the buyer failed to comply with its financing provision.
The case was tried non-jury. We state the facts in the light most favorable to the seller, the prevailing party below. See, e.g., New Nautical Coatings, Inc. v. Scoggin, 731 So.2d 145, 146 (Fla. 4th DCA 1999).
On April 22, 2003, the parties entered into a contract where Brightfelt agreed to sell D'Amico a residence in Port St. Lucie, Florida for $265,000. Included in the contract was the following provision:
IV. Financing

*873 This Contract is contingent on Buyer obtaining approval of a loan ("Loan Approval") within 14 days after Effective Date for a fixed rate loan, in the principal amount of $240,000, at an initial interest rate not to exceed 6%, discount and origination fees not to exceed ____ % of principal amount, and for a term of thirty years. Buyer will make application within (5) days after the Effective Date and use reasonable diligence to obtain Loan Approval and, thereafter, to satisfy terms and conditions of the Loan Approval and close the loan. Buyer shall pay all loan expenses. If Buyer fails to obtain a Loan Approval or fails to waive Buyer's rights under this subparagraph within the time for obtaining Loan Approval or, after diligent, good faith effort, fails to meet the terms and conditions of the Loan Approval by Closing, then either party thereafter, by written notice to the other may cancel this Contract and Buyer shall be refunded the deposit.
The contract was a form "Contract for Sale and Purchase," approved by the Florida Association of Realtors and the Florida Bar ("FAR/BAR").
The contract originally gave the buyer 30 days to obtain loan approval. However, because the seller wanted to be sure that there were no impediments to a quick sale, the parties reduced the time period for the buyer to obtain loan approval from 30 to 14 days. The seller explained to the buyer that he wanted to move quickly because he had to repay a loan used to remodel the subject house.
Before the parties entered into the April 23 contract, the buyer showed Brightfelt an April 17, 2003 letter from Cendant Mortgage, stamped "Fannie Mae Approval." The letter read:
Dear GUY M D'AMICO,
Congratulations! I'm happy to tell you that your mortgage loan for $280,000 has been approved by Cendant Mortgage. Now you and your agent can go house hunting with confidence, because sellers will know your offer is solid.
You can count on me and my team  backed by Cendant Mortgage's vast experience in the business  to be here for you from the time you make your offer to the moment you close. So as soon as you find your new home, just give me a call and we'll finalize the loan application.
The conditions you are required to satisfy to close your loan are attached . . . .

Sale Price: $350,000
Loan Amount: $280,000
Interest Rate on 04/17/2003: 4.125%
Type/Term of Loan: Conventional/360 months
Lock Option: Floating

. . .
The letter listed D'Amico's responsibilities and the items the lender required to complete the loan package before closing. One of the buyer's obligations was to provide a fully executed agreement of sale on the property being purchased, showing a sales price of $350,000.
At the seller's request, the buyer obtained a second approval letter that pertained to the St. Lucie residence. The second letter, stamped "Fannie Mae Approval," and dated April 22, 2003, read:
Dear GUY M D'AMICO,
Congratulations on finding your new home! I'm happy to tell you that your mortgage loan for $212,000 has been approved by Cendant Mortgage. Cendant Mortgage is looking forward to providing the funds to finance your new home and we want to thank you for choosing us as your mortgage provider. We promise to make the next phase of the financing process as easy and convenient for you as possible, so during the weeks ahead you can count on me and *874 my team at Cendant Mortgage to be here for you until the moment you close. Your Mortgage Loan Counselor will contact you in the next few days to personally guide you through the mortgage process.
The conditions you are required to satisfy to close your loan are attached.
. . .

Sale Price: $265,000
Loan Amount: $212,000
Interest Rate on 04/22/2003 4.210%
Your maximum rate of
4.335% expires on 06/21/2003
Type/Term of Loan: Conventional/360 months
Lock Option: Rate Protection

. . .
The letter listed further obligations and documentation required of the buyer before closing the loan. The buyer presented the April 22 letter to the seller before the expiration of the 14 day loan approval period.
The 14 day time limit expired on May 6. On May 7, the seller received a call from an appraiser seeking to appraise the property. Realizing that the 14 day time frame for loan approval had expired, the seller did not schedule the appraisal. The same day, the seller hand delivered a letter to the buyer's attorney cancelling the contract for the buyer's failure to timely obtain loan approval.
The buyer filed suit for specific performance. In response, the seller argued that the April 17 and 22 letters did not amount to "Loan Approval" within the meaning of the contract because neither was a final mortgage approval. In denying specific performance, the trial court decided the case upon narrower grounds, ruling that the letters did not satisfy the contract because they authorized different loan amounts than that specified in the contract.
We agree with the trial court that the April 17 letter did not satisfy the contract. The contract contemplated a $240,000 loan on a $265,000 home, amounting to over 90% of the sales price. The April 17 letter approved a loan of $280,000 on a $350,000 home, or 80% of the sales price. The April 17 loan approval was contingent upon the buyer producing a sales contract showing a $350,000 purchase price and an "appraisal on the subject property to support the value of $350,000." The April 17 letter approved a loan unrelated to the St. Lucie property.
Although the April 22 approval letter referenced the St. Lucie residence, the letter did not comply with the financing provision of the contract. The contract required the buyer to obtain approval for a loan "in the principal amount of $240,000"; the April 22 letter approved only a $212,000 loan, or 80% of the sales price. The loan amount approved in the April 22 letter "failed to fit within the limitations set up by" the financing provision of the contract. See Zepfler v. Neandross, 497 So.2d 901, 903 (Fla. 4th DCA 1986). The trial court ruled that the buyer did not waive his "rights under" the financing provision, a finding supported by the seller's view of the evidence.
In sum, the buyer neither obtained loan approval pursuant to the contract, nor timely waived his rights under the financing provision by indicating that he would proceed with sale without approval of a $240,000 loan. Therefore, the seller was justified in cancelling the contract. Because we decide the case upon the same grounds as the circuit court, we do not reach the question of what constitutes a "Loan Approval" under the contract.
Affirmed.
MAY, J., and IMPERATO, CYNTHIA G., Associate Judge, concur.