591 So.2d 1000 (1991)
JERRY'S, INC., Appellant,
v.
CITY OF MIAMI, Appellee.
No. 90-1717.
District Court of Appeal of Florida, Third District.
December 17, 1991.
As Clarified on Denial of Rehearing February 4, 1992.
Blackwell & Walker, James E. Tribble and David M. Rogero, Miami, for appellant.
Jorge L. Fernandez, City Atty., Warren Bittner and Kathryn S. Pecko, Asst. City Attys., for appellee.
Before HUBBART, FERGUSON and GODERICH, JJ.
FERGUSON, Judge.
This dispute arises out of a contract between the parties under which Jerry's agreed to operate a concession business and restaurant in the City-owned Coconut Grove Exhibition Center. Jerry's commenced this proceeding on a complaint for declaratory relief seeking a determination whether Jerry's owed any additional payments under the agreement. The City counterclaimed, seeking $103,372.75 as the additional amount owed under the agreement. At trial the court gave an interpretation of the contract different from that advanced by either party, allowed the City to amend its counterclaim to increase the amount sought to $340,197.00, and entered a judgment against Jerry's in that amount.
The rights and obligations of the parties are set forth in a thirty-page Restaurant and Concession Agreement which was given, at trial, three different interpretations by Jerry's, the City of Miami, and the trial judge. Although not a paradigm of clarity, the ten-year agreement was given an interpretation by the City in its corrected billings to Jerry's within five years after the restaurant became operational. At the heart of the controversy is paragraph 5 of *1001 the contract pertaining to consideration. It provides in three parts as follows:
a. Minimum Guarantee Payment:
Starting on the commencement date of this agreement, as set forth in paragraph 1[a] above, the CONCESSIONAIRE shall pay to the CITY, a minimum guaranteed monthly amount of Two Thousand Five Hundred ($2,500) until the restaurant becomes operational. At such time as the restaurant becomes operational the CONCESSIONAIRE shall pay to the CITY a minimum guaranteed monthly amount of Four Thousand Five Hundred Seventy-five Dollars ($4,575).
* * * * * *
b. Percentage Payment:
(1) Concession Stand Percentage Payment:
At the end of each year of this Agreement, calculation shall be made immediately of the CONCESSIONAIRE'S annual gross concession stand sales ... for the preceding Agreement-year. If CONCESSIONAIRE'S annual gross concession stand sales ... are One Hundred Thousand Dollars ($100,000) or less, then the CONCESSIONAIRE shall subtract the annual minimum guaranteed amount of Fifty-four Thousand Nine Hundred Dollars ($54,900) paid to the CITY from Twenty percent (20%) of his annual gross concession stand revenues ... and pay the difference, if any, to the CITY no later than October 20 of that year. If CONCESSIONAIRE'S annual gross concession stand sales ... are between One Hundred Thousand Dollars ($100,000) and One Hundred Fifty Thousand Dollars ($150,000) then the CONCESSIONAIRE shall subtract the annual minimum guaranteed payment amount of Fifty-four Thousand Nine Hundred Dollars ($54,900) made to the CITY from Twenty-five percent (25%) of his annual gross concession stand revenue ... and pay the difference, if any, to the CITY no later than October 20 of that year. If CONCESSIONAIRE'S annual gross concession stand sales ... exceed One Hundred Fifty Thousand Dollars ($150,000) then the CONCESSIONAIRE shall subtract the annual minimum guaranteed payment of Fifty-four Thousand Nine Hundred dollars ($54,900) made to the CITY from Thirty percent (30%) of his annual gross concession stand revenue ... and pay the difference, if any, to the CITY no later than October 20 of that year. Until the restaurant becomes operational the above calculations shall be made using a Thirty Thousand Dollar ($30,000) annual guaranteed payment (or proration of both, as appropriate).
(2) Restaurant Percentage Payment:
In addition to the concession stand percentage payment, at such time as the restaurant becomes operational, the CONCESSIONAIRE shall pay each month to the CITY Five percent (5%) of all gross revenues from restaurant sales ... or the combined Restaurant and Concession Stand monthly guaranteed amount of Four Thousand Five Hundred Seventy-five Dollars ($4,575), whichever is greater.
Jerry's contention in the complaint for a declaratory judgment was that it had no obligation to pay any more than had already been paid, and that the City was estopped to demand additional consideration based on its acceptance of payments already made.
The City contended that since November 1980, when the restaurant opened, Jerry's, in calculating the restaurant percentage due under paragraph 5(b)(2), deducted the minimum guaranteed payment from the amount due under the restaurant percentage payment, so as to avoid paying any restaurant percentage payment and to essentially operate the restaurant for no consideration. Jerry's contends here that the trial court rewrote the agreement so as to obligate it to make two $4,575 minimum guaranteed payments  one under 5(a) and another under 5(b).
In determining the intention of the parties, individual terms of a contract are not to be considered in isolation, but as a whole and in relation to one another. South Florida Beverage Corp. v. Figueredo, *1002 409 So.2d 490 (Fla. 3d DCA 1981), rev. denied, 417 So.2d 329 (Fla.), cert. denied, 459 U.S. 881, 103 S.Ct. 178, 74 L.Ed.2d 146 (1982). Accordingly, whatever ambiguities are to be found in 5(b)(1) are clarified by the unambiguous language of 5(a) and 5(b)(2).
Under paragraph 5(a), after the restaurant became operational, Jerry's was to make payments of no less than $4,575 per month even if there were no concession or restaurant revenues. Under 5(b)(2), Jerry's was obligated to pay, in addition to the concession percentage, $4,575 per month as a guaranteed minimum for the combined restaurant and concession operations, or five percent of all gross revenues from restaurant sales, whichever was greater. In no event were monthly payments to be less than $4,575.00. Neither does the agreement require Jerry's to make two monthly guaranteed payments of $4,575  one for the concession business and another for the restaurant.
There is no dispute between the parties as to the gross revenue from the restaurant and concession business for the purpose of computing the payments. Addressing the issue presented, we disapprove of the method of computation of both the trial court and Jerry's, and approve the method used by the City in arriving at its original claim.
Reversed and remanded for further consistent proceedings.