599 So.2d 1374 (1992)
OAKWOOD HILLS COMPANY, Kendall Racquet Club Associates, Three Top Mountain Company, F.H. Rutzke and Sons, Inc., and ERJ Associates, Inc., Appellants,
v.
HORACIO TOLEDO, INC., Appellee.
No. 91-467.
District Court of Appeal of Florida, Third District.
May 19, 1992.
Rehearing Denied June 23, 1992.
*1375 Rumberger, Kirk, Caldwell, Cabaniss, Burke & Wechsler and Michael R. Levin, Orlando, for appellants.
Paul J. Lane, Ft. Lauderdale, for appellee.
Before FERGUSON, LEVY and GERSTEN, JJ.
FERGUSON, Judge.
A jury returned a verdict finding that the appellants, owners of a time-share project, owed $6,406,830 in real estate commissions.[1] Several issues are raised regarding the court's evidentiary rulings and the interpretation of the commission contracts. We address the dispositive contract interpretation issue and reverse the judgment.
Real estate listing agreements entered into by the parties, called "Non-Exclusive Representative Agreements," described the formula and method for calculating and paying commissions. Paragraph 2(A) provided a three-part formula for calculating commissions. First, the selling agent was to receive 15% of the purchase price of the unit which included the down payment. Second, the agent was to receive 70% of the principal payments made pursuant to the purchase money note and mortgage. Third, the agent was to receive 67% of the interest received on the purchase money note and mortgage. The beneficial owners were entitled to the remaining 30% of principal payments and the remaining 33% of the interest payments as their return of equity and profit.
Another part of the commission agreement set forth the procedure for payment of commissions and the return of capital investments and profit to the owners. Paragraph 3 provided that the agent was to collect and receive all monies received on the sale of time-share units and was to pay $1,000 per quarter under each of the eight agreements with the beneficial owners. After two years, the agent was to account to the beneficial owners for their share of the principal and interest received on the purchase money notes and mortgages, retaining the balance as commissions.
Owing primarily to a decline in the market for time-share units and a loss of enthusiasm by those who had made down payments, the project became cash strapped. New units remained unsold and many of the purchase money notes and mortgages, which were hypothecated to operate the project, went into default. For reasons which are unclear, Toledo, the marketing agent, left the project. He refused to execute a waiver and release, and filed this action for commissions.
*1376 The main issue at trial was whether Toledo was entitled to commissions based on principal and interest amounts which he would have collected if all the purchase money mortgages had been paid, without default, over the seven year expected life of the mortgage. Toledo's theory, and the one obviously accepted by the jury, was that he was entitled to commissions on mortgage principal and interest without regard for whether the funds were collected. We disagree for two basic reasons.
First, the agreements, read as a whole, condition the obligation to pay commissions, except as to the initial down payments, on receipt of the mortgage payments. There is no other reasonable explanation for a three-part formula for calculating the amount of the commissions and describing the method of payment upon collection. Paragraph 3 of the agreement provides that the agent is to pay the beneficial owners their share of the funds out of principal and interest payments, "retaining any commissions" due out of the collected amounts. Assuming that the separate provisions do not clearly express the intent of the parties, that intent can be readily discerned from an examination of the contract as a whole. Jerry's, Inc. v. City of Miami, 591 So.2d 1000 (Fla. 3d DCA 1991).
Second, the parties understood, and conducted themselves as if, the additional commission payments would be made only if the amounts due on the mortgages were actually collected. In a 1983 letter to Mr. Toledo, Joel Amstell, an investor in the project, confirmed that the source of Toledo's commissions would be the collections. A numbered fourth paragraph in the letter stated:
Regarding the $1,600,000  $2,000,000 + that have been moved to Chern & Sevin, there is approximately $500,000  $700,000 that would be due you after the Sevin/Sadoff Trust has been paid off and the beneficial owners have gotten their money. The exact amount is really predicated on how well you do the delinquent collections.
Mr. Toledo testified that he understood that the letter meant that the commissions due him from mortgage receivables required that that those amounts be collected:
Q: There is approximately $500,000 to $700,000 that would be due you after the Sadoff/Sevin Trust has been paid off and the beneficial owners have gotten their money. The exact amount is really predicated on how you do the delinquent collection, right?
A: Correct. That is what the letter states.
Q: So you knew that if you couldn't collect enough of that $5.5 million in mortgages so that you paid off the beneficial owners, you wouldn't get a penny?
A: That if I could not collect?
Q: Right, then you wouldn't get a penny from the pre-August 26, 1983 sales?
A: Okay. According to the terms of this contract I would not get a penny out of this.
Consistent with that understanding of the agreement, Toledo never sought to be paid commissions for principal and interest payments on uncollected mortgage receivables prior to the termination of his relationship with the project.
"It is a recognized principle of law that the parties' own interpretation of their contract will be followed unless it is contrary to law." Welsh v. Carroll, 378 So.2d 1255, 1257 (Fla.3d DCA 1979), cert. denied, 386 So.2d 643 (Fla. 1980). Another principle of law applicable to the facts of this case is that the court may consider the conduct of the parties through their course of dealings to determine the meaning of a written agreement. Blackhawk Heating & Plumbing Co. v. Data Lease Fin. Corp., 302 So.2d 404, 407 (Fla. 1974).
By the terms of the agreements considered as a whole, the parties' understanding of the agreements, and the parties' course of dealings, it is clear that commissions for principal and interest on the mortgages were to be paid out of collected funds. Upon an examination of the *1377 record we agree with the appellants that the jury's finding otherwise was contrary to the manifest weight of the evidence and must be set aside. See Cloud v. Fallis, 110 So.2d 669 (Fla. 1959); Aronson v. Siquier, 318 So.2d 452 (Fla. 3d DCA 1975). Those facts outlined above constitute the essence of the substantial and competent facts.
We hold that the real estate listing agreements in question are not so ambiguous that they should have been construed adversely to the appellants as the drafters. The evidence relied upon by the appellee, consisting of discovery interrogatories and the testimony of an expert as to how timeshare sales are generally construed, is relatively insubstantial and of questionable competency. Having resolved the major point, however, it is not necessary to reach the issues relating to jury instructions and evidentiary rulings.
Reversed and remanded with instructions to reduce the damage award to the extent it includes commissions on uncollected mortgage receivables.
NOTES
[1] The actual damage exposure was limited pursuant to a "high-low" agreement entered into by the parties while the jury was deliberating. Notwithstanding the jury verdict, the maximum award would be $500,000 and the minimum award would be $50,000. This appeal, accordingly, is from a judgment for $500,000.