933 So.2d 580 (2006)
Antonia BUCACCI, Appellant,
v.
Paul BOUTIN, Appellee.
No. 3D04-2299.
District Court of Appeal of Florida, Third District.
June 14, 2006.
*581 Bennett Aiello Henry McGuinness, LLP, and Paul Aiello, Miami, for appellant.
Neal R. Lewis, Miami, and Thomas Murphy, for appellee.
Before GERSTEN, SHEPHERD and ROTHENBERG, JJ.
SHEPHERD, J.
Antonia Bucacci appeals from an adverse final summary judgment directing the partition of a Miami-Dade County residence jointly acquired by her and her significant other, Paul Boutin, during their now defunct relationship and dismissing for lack of subject matter jurisdiction her action to impose an equitable lien on a Monroe County parcel purchased by him during the relationship. We affirm the order of partition relating to the Miami-Dade County property with minor modifications, and find that the circuit court in Miami-Dade County has jurisdiction to adjudicate Bucacci's claim for equitable relief on the Monroe County parcel.

FACTS
From 1984 to 2000, Bucacci and Boutin lived together. Boutin managed the couple's personal finances and investments. In 1986, the couple purchased a home in North Bay Village as joint tenants with the right of survivorship pursuant to a written joint venture agreement. Apparently, Bucacci could not advance her portion of the down payment and closing costs. Thus, Boutin supplied the full amount needed and was afforded a lien against Bucacci's interest in the property for Bucacci's half, some $16,600, together with interest at the rate of nine percent, to be repaid from any future sale "either to a third party or to one of the Joint Venturers." The parties otherwise agreed that "all expenses of ownership of the . . . property shall be borne equally . . ." provided, again, that in the event one venturer "is unable to meet his or her responsibilities in this regard, the other Joint Venturer may advance [his or her share]" with the advance likewise to bear interest and "constitute a lien as against the defaulting *582 Joint Venturer's interest" upon sale either to a third party or to one of the joint venturers.
Although the couple's ownership, maintenance, and expense responsibilities are well-delineated in the joint venture agreement, the terms and conditions for the disposition of the property in the event one of the parties desires to sell the entire property or his or her interest over the objection of another leave something to be desired. In this regard, paragraph eight of the joint venture agreement provides:
In the event either of the Joint Venturers wish to sell and the other does not wish to sell, the non-selling Joint Venturer shall purchase the selling Joint Venturer's interest. The selling Joint Venturer shall serve the non-selling Joint Venturer with a written notice of his or her desire to sell and there shall be a period of sixty (60) days from service of said written notice to obtain appraisals as more fully set forth above, and after obtaining said appraisals the non-selling Joint Venturer shall have sixty (60) days from the date of the final appraisal to obtain necessary financing and close the purchase of the selling Joint Venturer's fifty percent (50%) interest in the property. In the event of the default on the part of the non-selling Joint Venturer, the selling Joint Venturer shall be free to convey his or her interest in the property to a third person or pursue appropriate legal remedies.
(Emphasis added).
In 1996, ten years after the purchase of the North Bay Village residence, acting with Bucacci's knowledge, Boutin purchased a five-acre waterfront parcel on Big Torch Key in his name alone. At the same time, the parties took out an equity credit line on the North Bay Village property. Bucacci alleges the purchase was made using funds from the credit line. She also alleges that with Boutin's encouragement, she devoted her own time and financial resources to make this their new home. In early 2000, Bucacci learned that Boutin had turned this new purchase, in her words, into a "love nest" for himself and a new paramour. By the end of the year, Bucacci's relationship with Boutin was over, and Boutin had departed the North Bay Village residence to pursue his new interest.
In both May and June 2001, Boutin communicated with Bucacci through counsel and sought either to put the North Bay Village property up for sale or sell his fifty-percent interest to Bucacci in accordance with the joint venture agreement. Bucacci admits receiving at least one of these communications, but did not respond to either. Boutin therefore filed a one-count complaint seeking partition and sale of the residence. Bucacci countered with a declaratory action, alleging the joint venture agreement precludes an involuntary sale. Specifically, Bucacci urged "she has a life estate in the subject real property, and that [unless the parties] jointly agree to sell the property, the house cannot be sold. . . ." She further sought an accounting of the parties' expenses for the fifteen years they jointly owned the property and an equitable lien on the Big Torch Key acreage for funds and resources attributable to her that went into improving the property. Bucacci has at all times refused to include her interest in the North Bay Village property in a sale.

DISCUSSION
Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). As such, our standard *583 of review is de novo. Id. Generally, interpretation of a document is a question of law rather than of fact. See Peacock Const. Co. v. Modern Air Conditioning, Inc., 353 So.2d 840, 842 (Fla.1977). Although parol evidence is admissible to assist a court in contract interpretation when the language of a contract is not clear, plain, certain, undisputed, unambiguous, or is subject to conflicting inferences, it is also a well-settled rule that "parol evidence is not admissible to vary or contradict the terms of a written instrument, and that a written instrument which is intelligible on its face must control . . . ." Olin's, Inc. v. Avis Rental Car Sys. of Fla., Inc., 141 So.2d 609, 611 (Fla. 3d DCA 1962) (emphasis added). Finally, we note that if an issue of contract interpretation concerns the intent of the parties and the relationship between them is a common one, in such a circumstance the issue is more likely to lend itself to judicial interpretation without resort to parol evidence. E.g., Peacock Const. Co., 353 So.2d at 842 (recognizing that, although it may be expressed differently, the intent in most construction subcontracts is that the obligation of the general contractor to pay the subcontractor is not dependent upon receipt of funds from the owner).

THE NORTH BAY VILLAGE PARCEL
The issue presented with respect to this parcel is a matter of contract interpretation. Bucacci contends that at the time she joined Boutin in the purchase of the property, they agreed it could not be sold without the consent of the other. She places primary reliance for her argument on the language of paragraph eight of the joint venture agreement, which purports to limit the judicial relief available to a non-defaulting party under the joint venture agreement to the "[pursuit of] appropriate legal remedies" in the event the defaulting party fails to carry through with her obligation to purchase the interest of the other. When used with precision in the legal world, reference to one's "legal remedies" ordinarily refers to actions at law, including prominently an action for monetary damages. See De Pantosa Saenz v. Rigau & Rigau, P.A., 549 So.2d 682 (Fla. 2d DCA 1989) (distinguishing between the applicability of legal and equitable remedies). Partition, the remedy sought by Boutin, is an action in equity. § 64.011, Fla. Stat. (2001). Thus, argues Bucacci, Boutin is constrained by paragraph eight of the joint venture agreement either to: (1) sell his interest in the property to a third party if he can find someone to buy it; or (2) continue to pay half of the expenses of the property so long as Bucacci lives in return for the privilege of receiving title to the property upon her death, if he happens to survive her.[1] Notably, if Boutin were to select the second of Bucacci's proposed alternatives, there is nothing in the joint venture agreement requiring Bucacci to live in the property during the term of the life estate she claims. Moreover, Boutin has no contractual assurance that he would recoup the half of the expenses of the continued joint ownership of the property he would be obligated to advance into the future to preserve the chance that the fates of life would lead to his acquisition of the property. And, ironically, if the fates ultimately were to favor Boutin, he would in any event lose the benefit of the security out of which the joint venture agreement provides he is to recoup the downpayment on the residence he made for the *584 benefit of Bucacci now twenty years ago (Bucacci's half interest in the property), as well as the security for any other advances he feels economically compelled to make to cure a default of hers in the future because, by operation of law, that security passes to him upon her death. See Florida Nat'l Bank v. Gann, 101 So.2d 579, 580 (Fla. 2d DCA 1958) (specifically identifying the benefit of a joint tenancy relationship as "the right of survivorship, by which the entire tenancy, on the decease of one tenant, remains to the survivors, and ultimately to the last survivor."). Thus elucidated, one can readily glean the absurdity of Bucacci's legal position.
Partition in Florida is governed by statute. See §§ 64.011-091, Fla. Stat. (2001). The general rule is that partition is a matter of right. Condrey v. Condrey, 92 So.2d 423, 426 (Fla.1957) (citing Willard v. Willard, 145 U.S. 116, 12 S.Ct. 818, 36 L.Ed. 644 (1892)). However, the right to partition may be waived. Condrey, 92 So.2d at 426 ("[U]nder our system of government, our guarantees of right to contract and rights of ownership and use of property, there appears to us to be no valid reason why the owners of undivided interests cannot contract not to partition land, except where the prohibition is for an unreasonable and/or indefinite period, or is otherwise so unreasonabl[y] restrictive as to be contrary to public policy."). In Condrey, Chase L. Condrey, Sr. and his wife conveyed their single-family residential parcel, including two rental units, to their son and his spouse to be held by both couples as joint tenants with the right of survivorship, the same estate as exists in our case. The parents asserted the conveyance was part of an oral arrangement whereby the younger Condreys would move into the main house with the parents, receive the income from the rental property, contribute to their aging parents' care and living expenses, and ultimately receive the property upon their death. Five years later, the younger Condreys moved out because of family differences and sought to partition the property. Our supreme court affirmed the trial court's decision denying partition. Recognizing that partition is favored in the law, the high court nevertheless concluded this was one of those "extreme cases . . . where manifest injustice, fraud or oppression will result if partition is granted." Id. at 427. The Court explained:
It is not conceivable under these facts that the parents, defendants, intended by said arrangement to put themselves in position to be forced from their home or to surrender the right to live there. Obviously this would not be for the protection of the parents and could not have been, in our opinion, the intention of the parties.
Id.
Similarly, our case law makes it clear that while litigants should be wary of relying upon an expectation that a court will so exercise its discretion, see id., a trial court sitting in equity has the authority to annul an agreement by one party to waive his statutory partition right where enforcement of that right would result in a manifest injustice, fraud, or overreaching by the party seeking to profit from the waiver, especially where that party does not appear before the court with clean hands herself. See Forehand v. Peacock, 77 So.2d 625 (Fla.1955) (holding that joint tenant who had agreed orally to waive her right to partition during her lifetime could seek dissolution of her agreement and partition where co-tenant breached his obligation to allow her the quiet enjoyment of the property during her lifetime).
Based upon our reading of the joint venture agreement, it is questionable in our mind whether the parties intended to *585 waive their statutory partition rights. The parties took title as joint tenants with right of survivorship shortly after they began living together as a couple. For fifteen years, the property was their personal residence. We have no reason to believe that if they had been married, they would not have taken title to the home as tenants by the entireties, as do most married couples. The conveyance of the marital home to one spouse or its sale is a common feature of marital dissolution actions. See, e.g., Sharon v. Sharon, 862 So.2d 789, 791-792 (Fla. 2d DCA 2003) (trial court did not abuse its discretion by allocating marital home to wife in dissolution action); Griffiths v. Griffiths, 563 So.2d 773, 776 (Fla. 3d DCA 1990) (trial court had discretion to order sale of marital residence in light of wife's request for partition).
Although Bucacci contends here that the agreement should be read to allow her a life estate in the property with a right of survivorship in Boutin, the agreement, when made, contemplated the possibility of a future joint decision to sell the property and the mechanics for its implementation. It also contains an express provision that if the parties are not in agreement concerning a sale, a party desiring to sell his interest, Boutin here, can enter into an agreement to sell that interest to a third party in the event of a default, as occurred here, by the non-selling venture partner in her obligation to purchase that interest. Although the provision is of marginal practical value to Boutin in the circumstances, it is apparent as a matter of law that if Boutin made an arms'-length sale of his interest in the property to a third party, the sale would have the legal effect of converting the present estate to an estate as tenants in common between Bucacci and the new purchaser, see Kozacik v. Kozacik, 157 Fla. 597, 26 So.2d 659, 661 (1946); Wittock v. Ramponi, 446 So.2d 271 (Fla. 4th DCA 1984), after which the same right to partition would inhere in the new purchaser as is presently prayed by Boutin. See § 64.071(1), Fla. Stat. (2001)(where the land is so situated that physical partition cannot be made without prejudice to the owners, the court may order a public sale); Carlsen v. Carlsen, 346 So.2d 132, 133 (Fla. 2d DCA 1977) (recognizing the marital home is not usually susceptible to division in kind). If Bucacci had, in the blissful early days of her relationship with Boutin, consciously intended to secure for herself a life estate in the property under all future circumstances, it is apparent from a perusal of the joint venture agreement as a whole that she neither indicated that intent in the document, nor definitively guaranteed herself that emolument. Triple E Development Co. v. Floridagold Citrus Corp., 51 So.2d 435 (Fla.1951) ("This Court, from time to time, has approved certain rules to be observed in the construction of contracts and among them are the following: (1) the contract should be considered as a whole in determining the intention of the parties to the instrument. . . ."); Macaw v. Gross, 452 So.2d 1126 (Fla. 3d DCA 1984) ("To ascertain the intention of the parties to a contract, the trial court must examine the whole instrument, not just particular portions, and reach an interpretation consistent with reason, probability, and the practical aspects of the transaction between the parties."). Given the inartfulness with which the agreement was drafted, we conclude it is more likely that the parties' use of the term "legal remedies" was intended to be construed in the more colloquial sense of any legal or equitable remedy. This conclusion is also consistent with what we perceive to be the usual intent in relationships of this type, that upon its conclusion, one of the parties will acquire the residence from the other or the residence will *586 be sold. See Peacock Const. Co., 353 So.2d at 842. It also is more harmonious with the ordinary disposition of the marital home in a dissolution action.
However, even if the parties intended in 1986 to waive their right to partition, we still conclude the trial court correctly ordered a partition and sale of the property in this case because, for the reasons stated aforesaid, we believe it would be manifestly unjust to enforce the purported waiver provision in this case. Unlike Condrey, wherein the senior Condreys performed their obligation under the agreement with their son and daughter-in-law, and like Forehand, where it was alleged the party seeking to enforce the waiver of the right to partition had engaged in misconduct or overreaching, it does not appear Bucacci has engaged in any additional conduct or action not contemplated by her participation in the joint venture from which an argument can be made that Boutin should be estopped from seeking dissolution of the purported waiver. It also is clear Bucacci has refused to purchase Boutin's interest in the property. We consider this to be one of those rare circumstances contemplated by our supreme court in which it is appropriate for the trial court to decline to enforce a purported waiver provision if such is deemed to exist in this case. As our high court stated in Forehand, "[o]ne entering into an agreement like that disclosed in this case is not required to pay the freight and then suffer torture by the other party to live by it." Forehand, 77 So.2d at 625.
Finally, Bucacci complains of the terms of the private sale of the property ordered by the trial court, arguing that the terms are confusing and "uncertain" of implementation. She also complains the trial court erred in not granting her an accounting with respect to contributions made and expenses incurred in the ownership and maintenance of the property during the years the parties have owned it. We agree with Bucacci on these points, and remand with directions that the property be sold by the clerk of the circuit court at a public auction pursuant to section 64.071 of the Florida Statutes, that an accounting be had to properly allocate and adjust the contributions and expenses among the parties during the years of their ownership of the property in accordance with the terms of the joint venture agreement, and that a distribution of the proceeds thereafter be made to the parties in proportion to their interest pursuant to section 64.071, after the payment of all costs, attorney fees and taxes, as required by section 64.081. In allocating each party's share of costs and attorney fees under section 64.081, the trial court may take into its consideration the fee shifting provision appearing in paragraph eight of the joint venture agreement.

THE EQUITABLE LIEN CLAIM
Additionally, we reverse the trial court's dismissal of Bucacci's claim seeking to impose an equitable lien on the Monroe County property. We agree with Bucacci that the local action rule, invoked by the trial court, does not prohibit the maintenance by her of this claim in the Miami-Dade County Circuit Court.
According to the local action rule, "when the property that is the subject matter of the controversy is real and the parties are seeking to act directly on the property or the title thereto, jurisdictional authority exists over the property only in the circuit where the land is situated." Ruth v. Dep't of Legal Affairs, 684 So.2d 181, 185 (Fla.1996); see also Goedmakers v. Goedmakers, 520 So.2d 575, 579 (Fla. 1988); Lallouz v. Lallouz, 695 So.2d 466, 467 (Fla. 3d DCA 1997). However, the local action rule does not preclude an action *587 where the parties seek an equitable remedy not directly affecting title to real property. Ruth, 684 So.2d at 186. If Bucacci is successful on her equitable lien claim, the title to the property will not be directly affected. We have long recognized that equitable lien claims may be brought in this district, even though the suit affects land not within the territorial jurisdiction of the court. Singer v. Tobin, 201 So.2d 799, 801 (Fla. 3d DCA 1967); see also Greene v. A.G.B.B. Hotels, Inc., 505 So.2d 666, 667 (Fla. 5th DCA 1987) (permitting a court in equity to entertain an action to reform a promissory note secured by a second mortgage on real property in another jurisdiction); Royal v. Parado, 462 So.2d 849, 854-55 (Fla. 1st DCA 1985) (permitting a court of equity to entertain an action to cancel and rescind a quitclaim deed to parcels of land located in another county). Furthermore, we anticipate some overlap in at least the evidentiary sources, if not the evidence itself, in the prosecution and defense of both the accounting and equitable lien claim. Accordingly, we reverse the trial court's order dismissing Bucacci's equitable lien action against the Monroe County property.
Affirmed in part and reversed in part. Cause remanded with directions.
NOTES
[1] At the time the couple parted company in 2000, Bucacci was forty-two-years old; Bout-in was forty-eight-years old.