964 So.2d 707 (2007)
Fred HADDAD, Appellant,
v.
Julia HESTER, Appellee.
No. 3D06-901.
District Court of Appeal of Florida, Third District.
April 18, 2007.
Rehearing and Rehearing Denied October 16, 2007.
Paul Morris, Miami, for appellant.
Roger G. Stanway, Hollywood, for appellee.
*708 Before RAMIREZ and LAGOA, JJ., and SCHWARTZ, Senior Judge.
Rehearing and Rehearing En Banc Denied October 16, 2007.
LAGOA, Judge.
Appellant, Fred Haddad ("Haddad"), appeals from a final judgment granting his former wife, Julia Hester ("Hester"), summary judgment in his action to partition a condominium owned by the parties as joint tenants with a right of survivorship. We affirm.
I. FACTUAL AND PROCEDURAL HISTORY
The parties were married in 1980 and divorced in 2002. In 2002, the parties entered into a Marital Settlement Agreement ("Settlement Agreement"), whereby the parties agreed to the distribution and ownership of the following seven pieces of property: the marital home in Ft. Lauderdale[1]; a condominium in Islamorada, Florida; an oceanfront lot in Flagler County, Florida[2]; a single family home in New Orleans[3]; a townhome located in the Victoria Park area of Ft. Lauderdale, Florida[4]; and properties in Lee County, Florida, and in Wayne County, Pennsylvania.[5] The property at issue in this appeal is the condominium in Islamorada ("Islamorada property"). Concerning ownership of the Islamorada property, the Settlement Agreement explicitly stated:
The parties both desire to keep this property, expecting it to pass to the children. The husband shall maintain this property and a quit claim deed shall be executed by the parties so that it is owned not as husband and wife but as joint tenants with right of survivorship.
*709 The Settlement Agreement also contained a schedule for alternating use of the Islamorada property as well as the following modification provision: "[t]he modification or waiver of any provision of this Agreement shall be effective only if made in writing and executed with the same formality as this Agreement."
On April 26, 2004, two years after the final judgment of dissolution had been entered, the parties entered into a Mediation Settlement Agreement ("Mediation Agreement"). Among the many issues resolved in the Mediation Agreement was an elaborate provision entitled "TIME SHARING FOR ISLAMORADA PROPERTY." In this provision, the parties agreed to a summer occupancy schedule and a schedule in which the parties split the use of the condominium each month, dependent upon whether it was an "odd year" or an "even year." Simultaneous with the execution of the Mediation Agreement, and in accordance with the previously entered into Settlement Agreement, the parties also executed a quit claim deed conveying title to the Islamorada property to themselves as joint tenants with right of survivorship.
In 2005, Haddad filed an action for partition of the Islamorada property and also alleged a special equity in the property. Hester subsequently filed a motion for summary judgment asserting that Haddad waived any right to bring a partition action based upon the terms of the Settlement Agreement and the Mediation Agreement.
The trial court granted Hester's motion for summary judgment on the ground that Haddad could not unilaterally modify the Settlement Agreement which "expresses the hope that  following the estate for their joint lives reserved by the parties  the survivor someday will convey it to the children born of their marriage." Haddad moved for rehearing and the trial court denied the motion. Haddad appeals from the final summary judgment and the order denying rehearing.
II. STANDARD OF REVIEW
Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). We review a trial court's ruling on a motion for summary judgment de novo. Id. Additionally, a trial court's decision construing a contract presents an issue of law that is subject to the de novo standard of review. Florida Power Corp. v. City of Casselberry, 793 So.2d 1174, 1178 (Fla. 5th DCA 2001).
III. ANALYSIS
On appeal, Haddad argues that the trial court reversibly erred in finding that he waived his right to partition the Islamorada property. Haddad argues that the Settlement Agreement and subsequent quit claim deed created a joint tenancy with a right of survivorship and that the trial court's ruling in effect determined that the parties instead created a life estate with a remainder to the parties' children. We find Haddad's argument without merit and affirm the trial court's final summary judgment in favor of Hester.
We begin our analysis by answering whether the right of a joint tenant with a right of survivorship may be waived. We answer that question in the affirmative. While a joint tenancy with a right of survivorship is an estate subject to an equitable partition action,[6] the right of a joint tenant to partition the estate may be waived. Indeed, a joint tenant may be estopped to enforce the right to partition *710 by either an express or implied agreement. See Condrey v. Condrey, 92 So.2d 423 (Fla. 1957). As the Supreme Court held in Condrey:
[W]hile partition is a matter of right to those holding undivided interests in lands, such right may be waived or the holder thereof estopped to assert the right by an express or implied agreement, otherwise enforceable, providing said agreement not to partition be for a reasonable and definite period of time and not otherwise unduly restrictive. An agreement not to partition during the life of any of the tenants does not appear to us to be for an unreasonable time. We find nothing in the statutes of this State contrary to this holding.
Id. at 426.
As the law provides for waiver of the right of partition, we must now look to whether the Settlement Agreement at issue expressly or implicitly contains such a waiver. The Settlement Agreement is an agreement interpreted by courts as any other contract. Berry v. Berry, 550 So.2d 1125, 1126 (Fla. 3d DCA 1989). Accordingly, in order to determine the intention of the parties, we look to the language of the contract and consider the contract as a whole, with each provision being construed with reference to the others. See Specialized Mach. Transp., Inc. v. Westphal, 872 So.2d 424, 426 (Fla. 5th DCA 2004); Jerry's Inc. v. Miami, 591 So.2d 1000, 1001 (Fla. 3d DCA 1991)("In determining the intention of the parties, individual terms of a contract are not to be considered in isolation, but as a whole and in relation to one another.").
Applying these contractual principles to the parties' Settlement Agreement, and the subsequent Mediation Agreement, we find an implied waiver of the right to partition. First, the Islamorada property is the only property in the Settlement Agreement that contained explicit language stating a desire for both parties to keep the property with the intention of passing it to the children.[7] While inartfully drafted, the intent is nonetheless clear. Moreover, the parties never altered this intent by subsequently modifying the Settlement Agreement. A modification, however, was feasible under the explicit terms of the Settlement Agreement if "made in writing and executed with the same formality" as the Settlement Agreement. As this was not done, the parties' intent remains  i.e., to keep the property with the expectation of passing it to the children. Accordingly, while inartfully drafted, the parties impliedly waived the right to partition by including this specific intent in the Islamorada property provision contained in the Settlement Agreement.
Additionally, the Islamorada provision is the only one in the Settlement Agreement that does not explicitly provide for the sale of the property or the distribution of proceeds if sold.[8] This is in stark contrast to the other property provisions. Regarding the marital home, the Settlement Agreement *711 provided that although, as with the Islamorada property, the parties would change the title from husband and wife to joint tenants with the right of survivorship, Haddad had the option of purchasing Hester's interest or of placing the home for sale. Additionally, if the marital home was sold, the Settlement Agreement explicitly stated that the profits be split between the two.
The parties also agreed to own the Flagler property as joint tenants with right of survivorship, and made provisions for the sale and split of profits for that property as well. As to the New Orleans home, the parties agreed that upon the sale of the property the first $45,000 was for the adult daughter and the remainder would be divided equally between Haddad and Hester. In addressing the Lee County and Pennsylvania properties, which the parties own as husband and wife, the parties agreed to resolve the issues between themselves.
Moreover, the Settlement Agreement also contained a schedule for the use of the Islamorada property with no time limit on the use of the condominium. The parties continued to behave in a manner consistent with this agreement when, two years later, they entered into the Mediation Agreement which set forth yet another schedule for alternating use of the Islamorada property. See generally Oakwood Hills Co. v. Horacio Toledo, Inc., 599 So.2d 1374, 1376 (Fla. 3d DCA 1992)(court may consider the conduct of the parties through their course of dealings to determine the meaning of a written agreement).
We find that the marked contrast between the property provisions of the Settlement Agreement concerning the Islamorada property and those of the parties' other properties, along with the specific language in the Settlement Agreement regarding the parties' desire to keep the property for their children, and the parties' course of dealings, lead to the conclusion that the parties waived their right to partition the Islamorada property. Accordingly, we affirm the trial court's order granting summary judgment in favor of Hester.
Affirmed.
SCHWARTZ, Senior Judge, concurs.
RAMIREZ, Judge. (dissenting).
Because I disagree with the majority's conclusion that we can state, as a matter of law, that appellant, Fred Haddad, impliedly waived the right to partition, I dissent.
The following is the pertinent portion of the provision of the Marital Settlement Agreement concerning the condominium:
The parties both desire to keep this property, expecting it to pass to the children. The husband shall maintain this property and a quit claim deed shall be executed by the parties so that it is owned not as husband and wife but as joint tenants with right of survivorship.
There is nothing in the agreement expressly waiving the right of partition, and I cannot imply from the quoted language that there was such a waiver. "Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law". Bucacci v. Boutin, 933 So.2d 580, 582 (Fla. 3d DCA 2006). The interpretation of a document generally involves a question of law rather than of fact. Id. at 583.
In reaching its decision, the majority not only examined how the parties dealt with other real property they owned, but also looked at the parties' behavior with regard to the use of the Islamorada property, all while affirming a summary decision of the trial court. Respectfully, if our decision cannot be rendered without resorting to an *712 examination of the conduct of the parties, then it is not one appropriately reached by summary judgment.
Additionally, I am not persuaded by the majority's attempt to reconcile our recent opinion in Bucacci, where we refused to deny partition based on an inartfully drafted agreement. Id. at 585-86. In Bucacci, the parties held a property as joint tenants with the right of survivorship pursuant to a written joint venture agreement. Id. at 581. Boutin filed a complaint seeking partition. Id. at 582. Bucacci countered with a declaratory action, claiming that the agreement precluded an involuntary sale. Id. More specifically, Bucacci argued that she had a life estate in the property and that the property could not be sold unless both parties agreed. Id. Bucacci based her argument upon the language of the joint venture agreement that purported to limit the judicial relief available to a non-defaulting party to the [pursuit of] appropriate legal remedies in the event the defaulting party fails to carry through with her obligation to purchase the interest of the other. Id. at 583. We rejected Bucaccis contention and in pertinent part stated:
If Bucacci had, in the blissful early days of her relationship with Boutin, consciously intended to secure for herself a life estate in the property under all future circumstances, it is apparent from a perusal of the joint venture agreement as a whole that she neither indicated that intent in the document, nor definitively guaranteed herself that emolument.
Id. at 585.
The same reasoning applies here, only with greater force, because each party in this case is an attorney and each was represented by counsel in connection with the agreement. The parties and their counsel certainly knew how to guarantee that the property would pass to the children and/or definitively provide for waiver of the right to partition. Rather, the parties merely expressed a hope that this property would pass to the children. Hester's sole contention for seeking summary judgment is that this hope, or expectation, constitutes a waiver of the right to partition.
It is true that the right to partition can be waived. Condrey v. Condrey, 92 So.2d 423, 426 (Fla.1957). But as noted by both the Florida Supreme Court in Condrey and this Court in Bucacci, Condrey was an extreme situation. Id. at 427. In Condrey, a husband and wife conveyed an undivided one-half interest in their home to their son and his wife as joint tenants with a right of survivorship. Id. at 425. It was agreed that the son and his wife could live on the property with the parents, receive income from rental units that were part of the property, and receive the property upon the parents death. Id. It was also agreed that during the parents lifetimes, the son and his wife would care for the parents as they got older. Id. Five years later, the son and his wife moved out due to family differences and sought to partition the property. Id. The Florida Supreme Court affirmed the trial courts decision denying partition, concluding that this was one of those extreme cases . . . where manifest injustice, fraud or oppression will result if partition is granted. Id. at 427. See also Rose v. Hansell, 929 So.2d 22, 23 (Fla. 3d DCA 2006) (characterizing Condrey as one of the rare exceptions to the general rule that partition is a matter of right). No such extreme case was presented in Bucacci or is presented here.
In Clear Channel Metroplex, Inc. v. Sunbeam Television Corp., 922 So.2d 229, 231 (Fla. 3d DCA 2006), we rejected the trial courts finding that a contractual provision restricted the use of a property to *713 broadcast purposes: There is simply nothing which even refers to broadcasting, much less imposes a limitation upon the parties use of their own property to that endeavor. It is of course clear that any restriction on ones use of her property must be very strictly construed. Id. Similarly here, there is simply nothing in either of the parties two written agreements that even refers to partition, much less provides for the voluntary and intentional relinquishment of that right as would be required for a valid waiver. Raymond James Fin. Servs., Inc. v. Saldukas, 896 So.2d 707, 711 (Fla.2005). Moreover, waiver must be accompanied by conduct that warrants an inference of the relinquishment of a known right. Miracle Ctr. Assocs. v. Scandinavian Health Spa, Inc., 889 So.2d 877, 878 (Fla. 3d DCA 2004). The record is devoid of any such conduct, as well.
For these reasons, I would reverse the summary judgment denying partition.
NOTES
[1] In reference to this property, the Settlement Agreement provided:

The husband shall continue to reside in the marital home due to the joint shared custody provisions. . . . After the minor child . . . begins college the husband shall have the option of purchasing the wife's interest at fair market value to be determined by an independent appraiser, one selected by each party, or of placing the property for sale. The parties will equally split the profits from such sale after the payment of outstanding mortgages, liens, debts, taxes and other encumbrances. The parties agree they shall execute a quit claim deed changing title from husband and wife to joint tenant with right of survivorship so that this property will be jointly owned and shall pass to the other in the event of the demise of either party.
[2] In reference to this property, the Settlement Agreement provided:

The parties own an oceanfront lot ready for building on Coquina Beach, Flagler County. The parties again shall execute a quit claim deed to cause this to be owned as joint tenants with right to survivorship. The parties already have the property listed for sale, and upon sale proceeds shall be used to satisfy 2001 Federal Income Tax Liability and debts of the marriage. Any remainder shall be equally divided by the parties. The property shall be maintained by the husband.
[3] This home was purchased for the adult daughter to use while attending school. The home was titled in the name of the parties' daughter and Hester and the down payment used was from monies the adult daughter received from her paternal grandfather. Apart from the down payment, the home was purchased with marital assets. The Settlement Agreement provided that:

Upon sale of the property the parties agree the first $45,000 shall be given, in trust as the parties concur, to [the daughter], with the remainder to be divided equally between the parties after payment of all mortgages, taxes, liens, encumbrances and the like.
[4] The Settlement Agreement provided that the this property was "the sole property of the wife save that upon sale of the marital home the husband shall receive a credit of $50,000 that was used to purchase the above referenced townhome."
[5] With regard to these properties, the Settlement Agreement provided that "[t]he parties will resolve these issues among themselves."
[6] See §§ 64.011-091, Fla. Stat. (2005).
[7] Although not necessary to reach our conclusion, we note that this Court's recent decision in Bucacci v. Boutin, 933 So.2d 580 (Fla. 3d DCA 2006), is not controlling on this issue. In Bucacci, unlike in the instant case, there was no express language in the parties' joint venture agreement to indicate any intention or desire to retain the property, and thus no agreement to waive partition could be so implied. Here, the parties knowingly included language in a detailed Settlement Agreement evidencing their desire to keep the Islamorada property with the intention of passing it to the children.
[8] Again, this fact is in contrast to those in Bucacci. In that case, the joint venture agreement "contemplated the possibility of a future joint decision to sell the property and the mechanics for its implementation." Bucacci, 933 So.2d at 585.